# IN THE DISTRICT COURT OF GUAM

JOHN RYAN,

        Plaintiff,

        v.

DAFNE MANSAPIT-SHIMIZU in her official
and individual capacities as the DIRECTOR OF
THE GUAM DEPARTMENT OF
REVENUE AND TAXATION, MARIE
LIZAMA in her official and individual
capacities as the DEPUTY DIRECTOR OF
THE GUAM DEPARTMENT OF
REVENUE AND TAXATION, EVELYN
VILLAPANDO, in her official capacity and
individual capacities, and JOHN DOES 1-15,

        Defendants.

Case No. 1:23-cv-00015

DECISION AND ORDER GRANTING
DEFENDANT VILLAPANDO'S MOTION TO
DISMISS, AND DENYING DEFENDANTS
MANSAPIT-SHIMIZU AND LIZAMA'S
MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE
12(b)(6)

Before the Court is Guam's Department of Revenue and Taxation ("DRT") Defendants Dafne Mansapit-Shimizu, Marie Lizama, and Evelyn Villapando's Motion to Dismiss the entire Complaint (ECF No. 1) against them pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Mot.," ECF No. 11.) Plaintiff John Ryan is a qui tam relator or plaintiff in three separate whistleblower matters and asserts two federal civil rights claims pursuant to 42 U.S.C. § 1983 against Mansapit-Shimizu, Lizama, and Villapando ("DRT Defendants") in their official and individual capacities for an alleged due process violation, a conspiracy to deprive him of due process, and for injunctive relief. Both § 1983 claims are premised on DRT Defendants' violations of Ryan's rights under Guam's False Claims and Whistleblower Act ("Whistleblower Act" or the "Act"), 5 G.C.A. § 37101 *et seq.* Ryan's remaining four state law tort claims are fraud in the inducement; intentional interference with prospective

1

relations; fraud by nondisclosure; and negligence. (Compl. ¶¶ 143-86.) Ryan seeks an injunction against DRT Defendants and DRT Does enjoining them from violating his rights under the Fifth[1] and Fourteenth Amendments. (*Id.* at Relief Requested ¶¶ 5-6.) Ryan filed an Opposition to the Motion (Opp'n, ECF No. 13) to which Defendants replied (Reply, ECF No. 14).

After reviewing the parties' filings, applicable legal authorities, and considering the oral arguments, the Court hereby GRANTS the Motion as to Defendant Villapando but DENIES the Motion as to Defendants Mansapit-Shimizu and Lizama. The Court finds *Younger* abstention is not appropriate in this case and that Defendants Mansapit-Shimizu and Lizama are not entitled to qualified immunity.

## I.      BACKGROUND

Guam's Whistleblower Act grants private individuals the right to "bring a civil action for a violation of [5 G.C.A.] §§ 37102 and 37103 for the person and for the government of Guam" for the underpayment of taxes levied under the laws of Guam. 5 G.C.A. § 37202(a).

Under the Whistleblower Act, Ryan has brought three qui tam suits against Guam companies that he believes are "tax avoiders" under 5 G.C.A. § 37101 *et seq.* (Compl. ¶¶ 28, 128, 140.) These suits include *Territory of Guam ex rel. John Ryan v. Titan Imports, Inc.*, Case No. CV1278-19 ("*Titan*"), *Territory of Guam ex rel. John Ryan v. Carson Guam Corp.*, Case No. CV0163-20 ("*Carson*"), and *Territory of Guam ex rel. John Ryan v. Permarch Guam, Inc.*, Case No. CV1279-19 ("*Permarch*"). (Compl. ¶¶ 129-30, 139-40; *Titan* Compl., ECF No. 1-1.)

After he became aware of several tax avoiders, Ryan first notified DRT in September 2019 that Titan Imports, Inc. ("Titan") failed to pay its Alcoholic Beverage Control ("ABC") Taxes. (Compl.

---

[1] Ryan cites to the First Amendment in two instances in his Complaint. (Compl. at Relief Requested ¶¶ 4-5.) However, Ryan cites to the Fifth Amendment in the Complaint overview and provides no factual support or argument for a First Amendment violation. As such, the Court construes the citation to the First Amendment as an error.

¶ 30.) For about two months, DRT failed to respond to Ryan. (*Id.* ¶ 31.) During those two months, the DRT Director had the authority to proceed with an administrative or judicial action against Titan. *See* 5 G.C.A. § 37103(a). On November 5, 2019, after DRT failed to respond to Ryan's notification, Ryan filed a qui tam action in the Superior Court of Guam on behalf of the Territory of Guam against Titan under Guam's Whistleblower Act for Titan's failure to pay its ABC Taxes. (Compl. ¶ 31; *Titan* Compl. ¶¶ 1-2, 4.)

Pursuant to 5 G.C.A. § 37202(b)(1), Ryan was required to file suit "in camera," which was to remain under seal for sixty days to allow the government of Guam to decide whether it wanted to intervene and proceed with the action. (Compl. ¶¶ 13, 14.)

Section 37202(b) of Title 5 of the Guam Code specifies that when an individual files a complaint under seal, he is required to serve the government, Attorney General, and Tax Commissioner with the complaint and written disclosures so the government can decide its course of action. Pursuant to 5 G.C.A. § 37202(b)(2), "[t]he government of Guam may elect to intervene and proceed with the action within sixty (60) days after it receives both the complaint and the material evidence and information." The government of Guam may also request extensions of time from the court. *Id.* § 37202(c)(1). Before the expiration of the sixty-day period or any extension a court grants, the government of Guam shall: "(1) proceed with the action, in which case the action shall be conducted by the government of Guam; or (2) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." *Id.* § 37202(d). The government may dismiss the action only with court and Attorney General written consent and the reasons for such consent. *Id.* § 37202(a)(2)). When the government elects not to intervene, and the filer proceeds with the action, the court "shall not permit the government of Guam to intervene at a later date." *Id.* § 37203(c)(2).

3

Additionally, "[n]otwithstanding § 37202, the government of Guam may elect to pursue its claim though any alternative remedy available to the government of Guam, including any administrative proceeding to determine a civil money penalty." *Id.* § 37203(e). If the government of Guam decides to pursue an alternative remedy, "the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under [5 G.C.A. § 37203]." *Id.*

Here, the government of Guam, acting on behalf of Guam's DRT, declined to intervene in *Titan* and filed a Notification of Declination to Intervene ("Declination") on January 6, 2020. (Compl. ¶ 32; Declination, ECF No. 1-2.) On January 9, 2020, the Guam Superior Court entered an order acknowledging DRT's Declination and Ryan's authority to proceed with *Titan*. (Compl. ¶ 33.)

In regards to any potential award to Ryan, had the government proceeded with the action initially brought by Ryan under 5 G.C.A. § 37202, Ryan is entitled to receive at least 15% but not more than 25% of the proceeds of the action or settlement depending on involvement. 5 G.C.A. § 37204(a). Because the government filed its Declination and Ryan continued to prosecute the action, the Guam Superior Court was to decide a reasonable award, which shall be not less than 25% and not more than 30% of the proceeds of the action or settlement, plus reasonable expenses, attorneys' fees, and costs to be awarded against Titan. 5 G.C.A. § 37204(b). If the government choose to pursue its claim through an alternative remedy pursuant to 5 G.C.A. § 37203(e), Ryan would be entitled to those same rights in the action, which in the *Titan* action is a reasonable award plus reasonable expenses, attorneys' fees, and costs.. *See* 5 G.C.A. § 37203(e).

Around November 18, 2020, despite DRT's Declination and after almost a year of only Ryan litigating *Titan*, DRT Defendants sent a letter to Titan demanding payment of delinquent 2015-2019 ABC Taxes. (*Id.* ¶¶ 62, 65.) DRT Defendants never notified or copied Ryan on its letter to Titan. (*Id.*

4

¶ 71.) On the same day DRT Defendants issued the demand letter to Titan, Ryan served a subpoena on DRT requesting Titan documents from January 2011 to November 2020. (*Id.* ¶ 66.)

Ryan exerted substantial effort to prosecute Titan on the government of Guam's behalf. (*Id.* ¶¶ 37-38). Ryan sought discovery from DRT, but DRT Defendants refused to discuss any of Ryan's pending qui tam suits, which included a separate qui tam action against Permarch, Guam Inc. ("Permarch") and Carson Guam Corp. ("Carson"), and DRT insisted they were not parties to the suits. (*Id.* ¶¶ 39-40, 56.) Particularly, on March 22, 2022, Permarch's attorney inquired about a possible settlement meeting between DRT and Permarch and Ryan's legal counsel's notice that DRT will not be involved in settlement discussions. (Att'y Emails 2, ECF No. 1-5.) The government of Guam's attorney stated, "Government of Guam actually declined to intervene in this [Permarch] case per 5 GCA § 37202(d)(2). The Government of Guam is not a party to the case and thus cannot settle the filed whistleblower action." (Att'y Emails 1 (citing 5 G.C.A. § 37203(c); *cf.* 5 G.C.A. § 37203(a), (b)(2)).) Further, DRT never pursued administrative proceedings against Titan, nor a criminal investigation. (Compl. ¶¶ 53-54.)

On March 25, 2022, Titan filed for bankruptcy. (*Id.* ¶ 57.) Through the bankruptcy proceeding, John Antenorcruz, Titan's President and Managing Director, represented that Titan was liable for approximately $2.56 million in accrued ABC Taxes to DRT for the period of time of 2015 to 2019. (*Id.* ¶ 61.) Antenorcruz and DRT Does arrived at an offer in compromise ("OIC"), and Antenorcruz through his agent, Aranda, submitted the proposed OIC of $600,000 to DRT, which represented payment for all "settled" delinquent taxes. (*Id.* ¶¶ 76-77.) This was negotiated on or around March 1, 2022, which was within thirty days of Titan filing for bankruptcy and over two years after DRT filed its Declination electing not to intervene in *Titan*. (*Id.* ¶¶ 32, 83, 98.) DRT Deputy Marshal Diane Rodriguez held the check for the $600,000 OIC. (*Id.* ¶¶ 77, 79.) DRT Deputy Rodriguez was the person

5

at DRT that Titan worked with but was not authorized to settle multimillion-dollar tax claims without the approval of DRT Director Mansapit-Shimizu and Deputy Lizama. (*Id.* ¶ 80.) At the time of filing, a stay was in effect for *Titan* because of its bankruptcy proceedings. (*Id.* at 2 n.2.)

In another of Ryan's qui tam actions against Guam corporations, *Carson*, Ryan filed his complaint, and the Superior Court of Guam unsealed the qui tam action. (Carson Order ¶ 5, ECF No. 13-1.)[2] Ryan and Carson actively litigated, and Ryan even litigated with a nonparty—the government of Guam. (*Id.* ¶ 3.) In August 2020, after Ryan filed the qui tam action, Carson remitted excise tax payments to the government of Guam in the amount of $91,400.73. (*Id.* ¶ 5; Compl. ¶ 31.) "DRT refused to cooperate after it had allowed . . . Ryan to prosecute and expend costs, expenses and attorneys' fees, and then took all of the remitted tax without providing . . . Ryan his award." (Compl. ¶ 134.) In January 2023, the Superior Court of Guam found that Ryan was entitled to 30% of Carson's remitted tax judgment in the amount of $27,420.21 pursuant to 5 G.C.A. § 37204(b)(2) because, but for Ryan's qui tam suit, there was no evidence Carson would have proffered the remitted tax. (Carson Order ¶¶ 7-8, 10; *see* Compl. ¶¶ 131, 133.) Additionally, the court found Ryan was entitled to 30% of Carson's remitted taxes prior to August 21, 2020. (Carson Order ¶ 12.) Significantly, the *Carson* court stated "[t]he Territory of Guam elected not to participate in this case when it filed, under 5 G.C.A. § 37203, its declaration on June 19, 2020, and allowed . . . Ryan to pursue its claim. The Government is thus not a party." (Carson Order 1 (citing 5 G.C.A. § 37203(c)(2)).)

---

[2] When ruling on a Rule 12(b)(6) motion, a court may consider only the pleadings and limited materials, such as "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). In Ryan's Complaint, he specifically references the "Carson Order" (Compl. ¶ 138), which is attached to Ryan's Opposition to Defendants' Motion to Dismiss in Braddock J. Huesman's Declaration at ECF No. 13-1. Under *Ritchie*, the Court may consider the document incorporated by reference in the Complaint without converting the Motion to Dismiss to a motion for summary judgment under Rule 56.

6

Just as in *Titan* and *Carson*, Ryan states he is similarly authorized to prosecute Permarch, in the 2019 *Permarch* qui tam action. (Compl. ¶ 140.) However, Ryan asserts that DRT Defendants are "are attempting to run the same game on the Permarch Case- and are actively negotiating with Permarch to settle the matter out from under . . . Ryan." (*Id.* ¶¶ 142.)

On May 12, 2023, Ryan filed this instant action against the Director of DRT Dafne Mansapit-Shimizu, Deputy Director of DRT Marie Lizama, DRT Employee Evelyn Villapando, and fifteen John Does. Included in Ryan's Complaint were exhibits referenced in his Complaint. (*See* ECF Nos. 1-1–1-7.)

## II.     LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(6)

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

For purposes of a Rule 12(b)(6) motion, the Court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins., Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But the Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation

7

marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

Generally, when ruling on a 12(b)(6) motion, a court may consider only the pleadings and limited materials, such as "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *Ritchie*, 342 F.3d at 908. If a court considers other evidence, "it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *Id.* at 907.

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to … facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegations of other facts." *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.  DISCUSSION

At the outset, the Court grants the Motion to Dismiss Ryan's Complaint as to Villapondo because she is only mentioned three times in Ryan's Complaint—in the case caption, complaint overview, and list of the parties. (*See* Compl. ¶ 4.) Ryan only identifies Villapondo as an employee of

DRT and does not identify any actions by Villapondo that would establish any type of liability. Therefore, pursuant to Rule 12(b)(6), Ryan has failed to state a claim for which relief may be granted as to Defendant Evelyn Villapondo, and the Complaint will be dismissed as to her without prejudice.

As for the remaining two DRT Defendants, they argue that Ryan's Complaint should be dismissed for the following reasons. First, he "fails to meet the requirement of §1983 that a claim involve a violation of a constitutional or federal right." (Mot. 8.) Second, DRT Defendants argue Ryan "seeks to hold Defendants liable for damages under §1983, but Defendants are not 'persons' within the meaning of that section." (*Id.* at 8.) Third, "Ryan makes his claims against the Defendants in their capacities as employees of the government of Guam, despite their being immune from suit." (*Id.*) Defendants also argue the Court should not entertain Ryan's causes of action because of the principles underlying the *Younger* doctrine. (*Id.* at 9.) Finally, DRT Defendants assert they are entitled to the defense of qualified immunity.

The Court addresses each argument in turn, and for the following reasons, denies Defendants Mansapit-Shimizu and Lizama's Motion. The Court also rejects Defendants' final argument based on the principles underlying the *Younger* doctrine and finds DRT Defendants are not entitled to qualified immunity.

**A. First Cause of Action under 42 U.S.C. § 1983 against DRT Defendants for Deprivation of Ryan's Due Process Rights**

**1. "Persons" under 42 U.S.C. § 1983**

Section 1983 provides that: "Every person who, under color of any statute . . . of any Territory . . . [that] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by

9

the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.

Defendants argue that they are not considered "persons" for purposes of a § 1983 claim, and therefore Ryan has no basis for relief. (Mot. 15.) Defendants cite the following proposition alleging that the type of relief a plaintiff seeks determines if a government official is a "person" under § 1983:

> "What *Ngiraingas, Ada*, and *Paeste* establish together is that the Government of Guam and its officials may be sued for prospective injunctive relief, as they are 'persons' for purposes of a § 1983 claim …. But if they are instead being sued for retroactive damages, the Government of Guam and Guam's officials do not meet the §1983 statutory definition of a 'person.'"

(*Id.* 15-16 (quoting *L. Offs. of Phillips & Bordallo, P.C. v. Birn*, No. CV 20-00018, 2021 WL 2229037, at *4 (D. Guam June 2, 2021), *appeal dismissed sub nom. Phillips & Bordallo, P.C. v. Birn*, No. 21-16113, 2021 WL 6197129 (9th Cir. Oct. 6, 2021)).)

This Court agrees with the legal proposition: DRT Defendants as the government of Guam and its officials may be sued for prospective injunctive relief as they are "persons" for purposes of a § 1983 claim. Ryan is in fact seeking injunctive relief against the official capacity DRT Defendants in the context of the *Permarch* qui tam action, to prohibit them from interfering in that case because the government of Guam has given its notice of declination. (*See* Compl. ¶ 140.) In the three qui tam actions Ryan initiated on behalf of the government of Guam—which the government of Guam filed its notices of declination and therefore was not thereafter a part of the case—DRT Defendants have twice negotiated a settlement with the tax avoider defendant without giving any notice to Ryan. (*Id.* ¶¶ 77, 131, 133.) Ryan now seeks an injunction against DRT Defendants to prohibit them from doing the same in *Permarch*.

As for Ryan's claim for damages under §1983 against DRT Defendants, the Supreme Court has stated:

10

State officials, sued in their individual capacities, are "persons" within the meaning of § 1983. Unlike official-capacity defendants—who are not "persons" because they assume the identity of the government that employs them, officers sued in their personal capacity come to the court as individuals and thus fit comfortably within the statutory term "person."

*Hafer v. Melo*, 502 U.S. 21, 21 (1991) (internal citation omitted). Here, Ryan requests relief seeking an award for compensatory damages and punitive damages against DRT Defendants "for their acts herein described, *personally* . . . ." (Compl. at Relief Requested ¶¶ 2-3 (emphasis added).) Therefore, the Complaint does sufficiently allege claims against DRT Defendants in their individual capacities.

### 2. Ryan's plausible 42 U.S.C. § 1983 cause of action

The first cause of action in Ryan's Complaint is a civil rights claim under § 1983 against DRT Defendants Mansapit-Shimizu and Lizama for their deprivation of his due process rights under Guam's Whistleblower Act. (*Id.* ¶¶ 143-150.) Ryan claims he has "a clearly established right to his property interest in the statutory award, including penalties and interest, his attorneys' fees, expenses and costs, and [] rights to conduct the Quit Tam Action without arbitrary and capricious interference from the DRT Defendants." (*Id.* ¶ 146.) Defendants on the other hand argue that Ryan "is not entitled to an award by the mere filing of the suit;" but "rather, his property interest is established if there are 'collected proceeds resulting from the action' and when the court decides an amount of award that is reasonable, or if proceeds have been collected by settling the claim brought in the action." (Mot. 11.) Moreover, Defendants argue that Ryan's rights are solely created by the Whistleblower Act and are not constitutional or federal in nature; therefore, Ryan does not provide a viable claim for relief under § 1983. (*Id.* at 7.) Defendants' arguments are misplaced.

"To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted).

11

The Fourteenth Amendment to the U.S. Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

In general, a due process violation is either procedural or substantive. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (procedural due process); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (substantive due process). Here, Ryan claims DRT defendants deprived him of his procedural due process under the Whistleblower Act. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Eldridge*, 424 U.S. at 332. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process. *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

Where "a violation of state law causes the deprivation of a right protected by the United States Constitution, that violation may form the basis for a Section 1983 action." *Lovell ex rel. Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) (citation omitted). The Supreme Court has long recognized that in procedural due process causes of action, "'[a]lthough the underlying substantive interest is created by 'an independent source such as state law,' *federal constitutional law* determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756-57 (2005) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)). The procedural component of the Due Process Clause, however, does not protect everything that might be described as a "benefit": "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire'" and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id*. (Citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Such entitlements

12

are, "of course, … not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id*. (citing *Paul v. Davis*, 424 U.S. 693, 709 (1976)). Further, the Ninth Circuit has "recognize[d] Section 1983 actions grounded on claims of the deprivation of state-created . . . property interests." *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1486 n.9 (9th Cir. 1993).

"[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Bush Co.*, 455 U.S. 422, 428 (1982). "State law can create a right the Due Process Clause will protect only if the state law contains '(1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met.'" *James v. Rowlands*, 606 F.3d 646, 656 (9th Cir. 2010) (quoting *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995)). For a state law to create a right protected by the Due Process Clause, it "must provide more than merely procedure; it must protect some substantive end." *Id.* (quoting *Bonin*, 59 F.3d at 842). The interest is created "if the procedural requirements are intended to be a significant substantive restriction on … decision making." *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1178 (9th Cir. 1998) (quoting *Stiesberg v. State of Cal.*, 80 F.3d 353, 356 (9th Cir. 1996)).

The Court finds that under the first element of a procedural due process claim, Ryan has plausibly plead that he has a protected property interest in the *Titan* qui tam action. The Whistleblower Act contains substantive predicates governing official decision making because it requires the government of Guam to either intervene or notify the court that it declines to intervene within sixty days of an individual filing a complaint. 5 G.C.A. § 37202(d)(1)-(2).

Pursuant to 5 G.C.A. § 37202, once a person brings an action for a violation of §§ 37102 and 37103, "the complaint shall . . . remain under seal for at least sixty (60) days." 5 G.C.A. § 37202(b)(1).

13

Within those sixty days, or within a Court ordered extension, "the government of Guam shall: (1) proceed with the action, in which case the action shall be conducted by the government of Guam; or (2) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." *Id.* § 37202(d)(1)-(2). "When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, *shall not permit the government of Guam to intervene at a later date*." *Id.* § 37203(c)(2) (emphasis added).

Here, the government of Guam submitted its Declination, and the Guam Superior Court entered an order allowing Ryan as the relator in *Titan* to proceed with the litigation. (Declination; *Titan* Order, ECF No. 1-3). Section 37203(c)(2) therefore precludes the government of Guam, which includes Guam's DRT, from intervening in the case thereafter. Therefore, the state procedural rights provided by Guam's Whistleblower Act are sufficient to support a procedural due process violation under § 1983 because the Guam officials do not have the discretion to deny Ryan the benefit that the Act confers, which are the right to conduct the action, and upon prevailing a portion of the proceeds, plus attorneys' fees, and costs against the tax avoider.

Next, the Court turns to the second element of the procedural due process claim: whether the government deprived Ryan of such property interest. The Supreme Court reasons "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan*, 455 U.S. at 1155 (citing *Memphis Light, Gas & Water Div.*, 436 U.S. at 11-12; *Goss v. Lopez*, 419 U.S. 565, 576-74 (1975); *Roth*, 408 U.S. at 576-78 (1972)). It held once a state-created property interest is conferred, the state may not constitutionally authorize the deprivation of such an interest without appropriate procedural safeguards. *Id.* (citing *Vitek v. Jones*, 445 U.S. 480, 490-91 n.6 (1980)). "[T]he Court explicitly limited its holding to 'a procedural limitation on the claimant's ability

14

to assert his rights, not a substantive element of the [underlying] claim.'" *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (quoting *Logan*, 455 U.S. at 433).

Here, the Court finds that the Ryan sufficiently alleges inadequate state process. Ryan alleges that DRT Defendants went against the procedures outlined in the Whistleblower Act and effectively, through unauthorized conduct, deprived him of his property interest. (Compl. ¶¶ 70-78.) Once the government of Guam filed its Declination, it served as notification that the government of Guam elected *not* to intervene in *Titan*. *See* 5 G.C.A. § 37202(d)(1)-(2). Yet, Ryan states the Defendants "contacted and negotiated with Titan despite the . . . Declination." (Compl. ¶ 73.) This is a direct interference and thus deprivation of Ryan's protected property interest to conduct his qui tam action, *Titan*. Additionally, if the government were to pursue an alternative remedy, such as its OIC with Titan, Ryan is entitled to the same rights, and including a right to a portion of the proceeds and payment for his expenses, attorneys' fees and costs as if the action were continued under 5 G.C.A. § 37203. 5 G.C.A. § 37203(e). The DRT Defendants secretly compromised Ryan's Qui Tam action against Titan for a claim worth $2.56 million with a settlement of $600,000 with no regard and consideration for Ryan's litigation expenses. As DRT Defendants recognize in their own Motion, proceeds collected by settling the claim brought in the action is Ryan's property interest. (Mot. 11.) Deputy Rodriguez held the check for Titan's $600,000 OIC. (Compl. ¶ 77.) As such, Ryan would be entitled to a percentage of the proceeds of the $600,000 OIC pursuant to 5 G.C.A. § 37203(e). Yet, Ryan has not received any such proceeds. (*See id.* ¶ 101.) These facts sufficiently allege a deprivation by state action of Ryan's protected interest in *Titan*.

The Supreme Court has held that

> unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is

15

available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Here, the Court finds that Ryan not only has alleged an intentional unauthorized deprivation by a state official, but also that the State refuses to provide any postdeprivation remedy or process. (*See* Compl. ¶ 26, 116, 13) As such, Ryan alleges sufficient facts for a procedural due process cause of action under § 1983.

**B. Second Cause of Action: 42 U.S.C. § 1983 Conspiracy by DRT Defendants and Other Defendants to Deprive Ryan of Due Process**

Ryan alleges that all Defendants, the DRT Defendants and John Does conspired to interfere with his rights under the Act. (*Id.* ¶ 152.) "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)).

Ryan's Complaint sufficiently pleads facts to support the claim of conspiracy to deprive him of his due process rights under the header "*The Bankruptcy Uncovers the Attempt to Harm Mr. Ryan and Reduce the Value of DRT's Claim.*" (Compl. ¶¶ 57-127.) In particular, Antenorcruz—the Managing Director and President of Titan, the defendant in the qui tam action—negotiated the OIC pre-bankruptcy petition and explicitly identified Deputy Rodriguez at DRT as the person who held the OIC payment of $600,000. (Compl. ¶¶ 77, 79; Tr. 8, 62-63, ECF No. 1-7.) Rodriguez was not authorized to settle a multimillion-dollar tax claim without the approval of Director Mansapit-Shimizu and Deputy Director Lizama. (Compl. ¶¶ 79-81.) Therefore, the Complaint sufficiently identifies the DRT Defendants as the ones that authorized the settlement with Titan without Ryan's knowledge and

involvement, knowing Ryan had rights under the Whistleblower Act because of the Titan Qui Tam action.

Ryan also alleges how the DRT Defendants and the other Defendants made false and misleading statements. "Through Mr. Antenorcruz's testimony in the Bankruptcy Proceeding, Mr. Ryan learned that the same DRT Defendants who insisted DRT was not a party and could not settle the Qui Tam Action, were the same DRT Defendants who solicited the OIC directly from Titan in violation of Mr. Ryan's rights." (*Id.* ¶¶ 61, 77, 97.) It is evident that taken Ryan's facts as true, there were false and misleading statements made.

Ryan also sufficiently identifies when the misconduct took place. The Complaint states that DRT Defendants met in secret with Titan's principal owner, Antenorcruz, and other Titan agents who advised Titan as part of the *Titan* action and bankruptcy, without involving Ryan in these discussions, all the while Ryan engaged in discovery in foreign jurisdictions, and the secret meetings culminated in the settlement check negotiation on or around March 1, 2022. (*Id.* ¶¶ 74-83, 124-25.) Although Ryan does not allege facts showing where the DRT Defendants precisely met with Titan representatives, the Complaint establishes sufficient facts to show the OIC negotiations between DRT and Titan took place pre-bankruptcy petition while DRT was receiving notices from Ryan in *Titan*. (*Id.* ¶¶ 74-83.) Ryan also alleges "how" the fraudulent acts occurred when he states "[o]n information and belief, the DRT Defendants made the initial inquiry to Titan, based on Mr. Ryan's information given to DRT." (*Id.* ¶ 87.) Despite the fact that Ryan had sole legal authority to pursue *Titan*, Titan's agents never included Ryan in their discussions with DRT to settle the outstanding unpaid taxes. (*Id.* ¶ 74.) Thus, Ryan alleges sufficient facts for his second cause of action of conspiracy between the DRT defendants and Titan's agents to deprive Ryan of procedural due process under § 1983.

17

**C. Third and Fifth Causes of Action: Fraud in the Inducement and Fraud by Nondisclosure**

"To state a claim for fraud, a plaintiff must allege with particularity: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage." *Eurosemillas, S.A. v. Uttarwar*, 854 F. App'x. 137, 139 (9th Cir. 2021). DRT Defendants contend that Ryan did not "identify a misrepresentation made by Defendants or intent to defraud." (Mot. 12.)

Because Ryan's Complaint involves allegations of fraud, Rule 9(b)'s heightened pleading requirements apply. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

"To satisfy Rule 9(b)'s particularity requirement, the complaint must include 'an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). In other words, the pleading "must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

Ryan states, "[t]he DRT Defendants after DRT declined to intervene, refused to discuss any of these cases with Mr. Ryan and insisted they were not parties, could not participate, would not participate and would have nothing to do with the case." (Compl. ¶ 40.) "Through Mr. Antenorcruz's testimony in the Bankruptcy Proceeding, Mr. Ryan learned that the same DRT Defendants who insisted DRT was not a party and could not settle the Qui Tam Action, were the same DRT Defendants who solicited the OIC in violation of Mr. Ryan's rights." (*Id*. ¶ 97.) Both the DRT Defendants and

18

Titan were aware through *Titan* about the alleged delinquent taxes, penalties and interest dated back to 2011 and were valued at least $2.56 million or more. (Compl. ¶¶ 70, 78.) After DRT declined to intervene in January 2020 (*Titan* Compl.), DRT Defendants encouraged Ryan to expend attorneys' fees, expert fees and other costs to prosecute Titan for the ABC Tax claim. (*Id*. ¶ 69.) The Complaint alleges DRT issued a demand letter directly to Titan in November 2020, and then engaged in settlement discussions with Titan which resulted in the $600,000 OIC by Titan directly to DRT in March 2022, all without Ryan's notice and involvement. (*Id.* ¶¶ 61, 67.) The Complaint sufficiently alleges DRT secretly engaged in negotiations and a settlement with Titan, which deprived Ryan of his right to prosecute the Qui Tam Action, as well as his right to a portion of the recovery, attorney's fees, and costs, all under the Whistleblower Act. Taking these factual accounts as true, DRT Defendants made misrepresentations to Ryan.

DRT Defendants state that Ryan did not sufficiently allege intent. (Reply 8-9.) The Court disagrees. Under Rule 9(b), intent need only be alleged generally. The Complaint alleges Ryan first notified DRT directly about the alleged non-payment of alcohol excise taxes by Titan in September 2019. (Compl. ¶ 30.) Two months later, Ryan filed the qui tam action against Titan, and then served all the papers on DRT as required under the Whistleblower Act. After the government of Guam filed its notice of Declination, Ryan continued to serve papers about the qui tam action on DRT through its legal counsel. About a year before the $600,000 OIC payment was made by Titan to DRT, Ryan's legal counsel reached out to DRT's legal counsel to seek ways for Ryan to be able to work with the DRT Defendants in the *Titan* Qui Tam action. (ECF No. 1-6.) Ryan did not receive any assistance or cooperation from the DRT Defendants, and Ryan continued to incur expenses pursuing the action through discovery that were served on DRT and Titan. ( Compl. ¶ 124.) Based on all these facts alleged, Ryan sufficiently plead fraud in the inducement and fraud by nondisclosure in his Complaint.

## D. Fourth Cause of Action: Intentional Interference with Prospective Relations

For an intentional interference with prospective relations claim, Ryan must allege

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Wirges v. Bonsembiante*, Trial Order, No. 0775-cv-16 (Guam May 1, 2010) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003)).

As for the first element Ryan alleges an economic relationship between himself and the government of Guam when he filed *Titan*. (Compl. ¶ 30.) Ryan states that DRT Defendants knew of this relationship through the qui tam actions in *Titan*, *Carson*, and *Permarch* and alleging DRT Deputy Rodriguez could not approve the OIC settlement without two of the named DRT Defendants whom Ryan stated would not work with him. (*Id.* ¶¶ 79-82.) Ryan alleges that DRT Defendants negotiated a $600,000 OIC with Titan, which is evidenced by Antenorcruz's testimonial statements. (*Id.* ¶ 89.) The DRT Defendants instructed their attorney to inform Ryan that they were not involved in the Qui Tam Action. (*Id.* ¶ 178.) The Act required the government of Guam to notify Ryan in the event it elected to pursue its claim through any alternate remedy available to the government of Guam, including any administrative proceeding to determine a civil money penalty, because Ryan had the same rights in such proceeding as he had if the qui tam action had continued under § 37203. 5 G.C.A. § 37203(e). Ryan detrimentally relied on DRT's statements as well as their silence, and he suffered damages as a result. (Compl. ¶¶ 180-81.)

This only leaves the requirement that a plaintiff seeking recovery must plead that the defendant engaged in an independently wrongful act in disrupting the relationship. For this element to be satisfied, the Complaint must plead conduct, "proscribed by some constitutional, statutory, regulatory, common

20

law, or other determinable legal standard." *Korea Supply Co.*, 63 P.3d at 937. This last prong is satisfied through Ryan alleging fraud, which, as outlined above, Ryan sufficiently pleaded in his Complaint. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 1092, 1117 (C.D. Cal. 2015) ("[F]raud and misrepresentation can constitute independently wrongful conduct to support a claim for intentional interference with prospective economic advantage, those allegations must satisfy Federal Rule of Civil Procedure 9(b)." (citations omitted)).

### E. Sixth Cause of Action: Negligence

"To recover under a theory of negligence under Guam law, a plaintiff must establish 'the existence of a duty, the breach of such duty, causation, and damages.'" *Carlberg v. Guam Indus. Servs.*, No. 14-00002, 2016 WL 749351, at *5 (D. Guam Dec. 30, 2016) (citation omitted).

Ryan relies on the Whistleblower Act to establish DRT Defendant's duty to him. After the Government filed its Declination in the *Titan* Qui Tam Action, Ryan had the right and sole authority "to conduct the action." 5 G.C.A. § 37202(d)(2). This right includes settling the claim. (Compl. ¶ 7); 5 G.C.A. § 37204(b)(2). The Government was precluded from intervening. *Id.* § 37203(c)(2). Furthermore, Ryan argues that "even if the Government invokes its 'alternate remedy' it is required to provide the plaintiff-relator with notice and opportunity to respond." (Compl. ¶ 7.) In support of this duty, Ryan cites to 5 G.C.A. § 37203(e).

> Notwithstanding § 37202 (Actions by Private Persons), the government of Guam may elect to pursue its claim through any alternate remedy available to the government of Guam, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, *the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this Section.*

5 G.C.A § 37203(e) (emphasis added).

Had the government of Guam elected to proceed with the action, it had the authority to settle the Qui Tam Action with *Titan*; but even so, the Act requires the court to determine, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. *Id.* § 37203(b)(2). Instead of giving Ryan any notice and opportunity to be heard, Ryan claims he was not informed about nor included in the settlement negotiations between DRT and Titan, was not informed of the settlement reached, and was not paid any award from the $600,000 OIC that DRT received from Titan before Titan filed for bankruptcy. (*See* Compl. ¶¶ 77, 83.) Based on these alleged facts and the provisions of the Whistleblower Act, Ryan has plausibly stated a negligence claim. Accordingly, DRT Defendants' Motion is to dismiss fails as to Ryan's sixth cause of action for negligence.

### F. *Younger* Abstention

Defendants argue that Ryan's Complaint should also be dismissed because of the principles underlying the *Younger* doctrine. *Younger v. Harris*, 401 U.S. 37 (1971) "and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). *Younger* abstention is applicable in three exceptional circumstances. First, "*Younger* precludes federal intrusion into ongoing state criminal prosecutions." *United States v. Gov. of Guam*, CIVIL CASE NO. 02-00022, 2017 WL 1347667, at \*1, \*8 (D. Guam Apr. 7, 2017) (citing *New Orleans Pub. Serv. Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). "Second, certain 'civil enforcement proceedings' warrant *Younger* abstention." *Id.* (citing *New Orleans Pub. Serv. Inc.*, 491 U.S. at 368). Last, "federal courts should refrain from interfering with pending 'civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (citing *New Orleans Pub. Serv. Inc.*, 491 U.S. at 368).

22

The Court finds that *Titan*, Ryan's underlying action, does not qualify under these three exceptional circumstances that would require *Younger* abstention. However, even if it did qualify, the Court still finds that *Younger* abstention is inappropriate. The Ninth Circuit has found that in civil cases "*Younger* abstention is appropriate only when the state judicial proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014) (citations omitted).

First, "[w]here, . . . 'no final judgment has been entered' in state court, the state court proceeding is 'plainly ongoing' for purposes of *Younger*." *Page v. King*, 932 F.3d 898, 902 (9th Cir. 2019) (citation omitted). Therefore, despite the stay pursuant to the *Titan* bankruptcy, *Titan* is an ongoing state judicial proceeding.

Second, this action does not involve a quasi-criminal enforcement action nor involves a state's interest in enforcing the orders and judgments of its courts and therefore the second *Younger* element is not met. The Ninth Circuit has held that an action does not involve the state's interest in enforcing the orders and judgments of its courts where the action does not question the process by which state courts compel compliance with the state law. *See Rynearson v. Ferguson*, 903 F.3d 920, 927 (9th Cir. 2018). Here, the Court's determination regarding DRT Defendants does not bear on the validity of the state's orders or the procedures by which the state court issues or enforces them because DRT Defendants are not parties to the underlying state action. The Court therefore concludes this civil rights action does not invoke the state's interest in enforcing the orders and judgments of its court.

23

Third, the Court finds that the underlying qui tam state court action does involve an important state interest because it involves state tax systems. *See Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102 (1981).

For the final *Younger* requirement, the plaintiff has the burden to show that it was barred from raising its federal claims in state court. *Lebbos v. Judges of Superior Ct.*, 883 F.2d 810, 815 (9th Cir. 1989). Where, for procedural or other reasons, a state court deprives a plaintiff of an opportunity to raise federal claims, *Younger* abstention does not apply. *Dubinka v. Judges of Superior Ct. of State of Cal. for Cnty. of L.A.*, 23 F.3d 218 (9th Cir. 1994). Here, Ryan could not bring his state claims, nor his federal claims in *Titan* because the DRT Defendants are not parties in *Titan*. (Compl. ¶ 40.) Thus, the final element of *Younger* is not met.

Although *Titan* is ongoing and concerns important state interests, the Court finds abstention under *Younger* inappropriate because the *Titan* action does not involve a quasi-criminal enforcement action nor involve a state's interest in enforcing the orders and judgments of its courts, and Ryan is not able to bring his claims as against the DRT Defendants in the *Titan* Qui Tam action.

### G. Defense of Qualified Immunity

Finally, Defendants assert the defense of qualified immunity. (Mot. 18.) They contend that there is not a clearly established right under the Act to limit or modify DRT employees from communicating with tax payers, and therefore the second prong of the qualified immunity analysis is not met. (*Id.* at 19.)

"At the motion to dismiss stage, 'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.'" *Polanco v. Diaz*, 76 F.4 918, 925 (9th Cir. 2023) (citing *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016)).

24

The parties agree that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Officers may not avail themselves of qualified immunity if there (1) has been a violation of a constitutional right, and (2) if the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 232. "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). "[A] statute itself, standing alone, may provide sufficient evidence that the law was clearly established at the time of the conduct." *Schwenk v. Hartford*, 204 F.3d 1187, 1205 (9th Cir. 2000) (citing *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1452 (9th Cir. 1995)).

Here, Ryan alleges § 1983 causes of action for violation of his procedural due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution. "[D]ue process violations must be particularized before they can be subjected to the clearly established test." *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996) (quoting *Kelly v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)). Defendants attempt to define the protected right too narrowly as the "right to prohibit Defendants from communicating with Titan after he commenced the Whistleblower action." (Mot. 19.) Ryan's protected constitutional right, however, is the right to conduct his qui tam action under 5 G.C.A. § 37202(d)(2) and § 37203(c), which includes the right to settle the case. Additionally, in so far as the Act permits the government of Guam to pursue an alternative remedy, Ryan was entitled to the same rights in that proceeding. *Id.* § 37203(e). The Court finds that under the first prong of the qualified immunity analysis, Ryan has plausibly plead that he has a protected property interest in conducting the *Titan* Qui

Tam action itself, which granted him a property interest in a statutory award of at least 25% that he would be entitled to in the $600,000 OIC settlement payment received by DRT in full satisfaction of Titan's tax liabilities, plus his attorneys' fees, expenses, and costs against Titan in actually litigating the Qui Tam Action. Instead of Ryan settling the Qui Tam action with Titan, DRT Defendants secretly negotiated and settled with Titan without any notice or opportunity to be heard given to Ryan. Additionally, the Court has found that Ryan has plausibly plead DRT Defendants' violation of such constitutionally protected property right.

For the second prong of the qualified immunity analysis, the question then, is whether the Act provides fair warning that the conduct in question was contrary to the statute's commands. The Court finds that the Act is clear and provides fair warning.

When the government elects not to intervene, as it has done in *Titan* though filing its Declination, and Ryan proceeds with the action, the government of Guam is barred from intervening at a later date. 5 G.C.A. § 37203(c)(2). Moreover, if the government of Guam does decide to pursue its claim through any alternative remedy, "the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under [5 G.C.A. § 37203]." *Id.* § 37203(e). Although not all communication between the government of Guam and *Titan* was prohibited by the Act, the government of Guam after filing its Declination was explicitly prohibited from "interven[ing] at a later date." *Id.* § 37203(c)(2). DRT's OIC to Titan, at a minimum, constitutes an alternative remedy to which the Act dictates Ryan is entitled to the same rights if the action had continued under 5 G.C.A. § 37203. Therefore, a reasonable official would have understood that providing an OIC to Titan, after the government of Guam filed its Declination, and without any type of notice to Ryan—the individual with the sole right to conduct the qui tam suit—was unlawful. As such, DRT Defendants are not entitled to the defense of qualified immunity.

26

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the DRT Defendants' Motion to Dismiss the Complaint. In particular, the motion is granted as to Defendant Villapando with leave for Ryan to amend the Complaint; however, the motion is denied as to Defendants Mansapit-Shimizu and Lizama. The Court concludes that the two remaining DRT Defendants are "persons" under § 1983 and therefore may be sued in their individual capacities for monetary damages. Additionally, the DRT Defendants are "persons" for purposes of § 1983 in their official capacities when Ryan seeks prospective injunctive relief. Finally, *Younger* abstention is not appropriate in this case and DRT Defendants are not entitled to qualified immunity.

IT IS SO ORDERED this 11th day of July 2024.

RAMONA V. MANGLONA
Designated Judge