**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| JOHN RYAN,<br><br>       Plaintiff,<br><br>   v.<br><br>DAFNE MANSAPIT-SHIMIZU in her official and individual capacities as the DIRECTOR OF THE GUAM DEPARTMENT OF REVENUE AND TAXATION, MARIE LIZAMA in her official and individual capacities as the DEPUTY DIRECTOR OF THE GUAM DEPARTMENT OF REVENUE AND TAXATION, and JOHN DOES 1-15,<br><br>       Defendants. | Case No. 1:23-cv-00015<br><br><br>**MEMORANDUM DECISION DENYING DEFENDANTS' MOTION FOR JUDICIAL DISQUALIFICATION AND GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL** |

This matter came before the Court for a hearing on October 21, 2025, on Defendants' Motion for Judicial Disqualification (ECF No. 70) and Plaintiff's Motion to Compel and for Sanctions (ECF No. 50). (*See* Mins., ECF No. 78.) At the conclusion of the hearing, the Court orally denied Defendants' Motion for Judicial Disqualification and granted Plaintiff's Motion to Compel in part. (*Id.*) The Court now issues this memorandum order to set forth its reasoning in writing.

## I. BACKGROUND

On May 12, 2023, Plaintiff John Ryan filed a twenty-six-page Complaint, in which he identified Guam Department of Revenue and Taxation ("DRT") Director Dafne Mansapit-Shimizu, DRT Deputy Director Marie Lizama, and DRT employee Evelyn Villapando as

defendants ("the DRT Defendants") alongside fifteen other unnamed defendants. (Compl. ¶¶ 2-6, ECF No. 1.) Plaintiff alleged the following.

(1) In November 2019, he brought a qui tam action in the Superior Court of Guam against Titan Imports, Inc. ("Titan"), a Guam-based liquor and spirits distribution company, to recover unpaid alcohol excise taxes pursuant to the Guam False Claims and Whistleblower Act ("Whistleblower Act"), 5 Guam Code Ann. §§ 37101 *et seq.* (*Id.* ¶¶ 28-31.)

(2) The DRT declined to intervene in Plaintiff's qui tam action, thus permitting Plaintiff to prosecute the action, settle the action, and collect attorneys' fees and at least a quarter of all tax proceeds recovered in the action. (*Id.* ¶¶ 32-38.)

(3) During the course of litigating the qui tam action, Plaintiff repeatedly sought discovery and other materials from DRT, but the DRT Defendants refused to participate, misled or directed DRT attorneys to mislead Plaintiff about the DRT Defendants' actions, failed to comply with subpoenas, and did not initiate any separate administrative or criminal proceedings against Titan. (*Id.* ¶¶ 39-42, 50-56.)

(4) In March 2022, Titan's bankruptcy filings revealed to Plaintiff that DRT had communicated extensively with Titan since at least late 2020 to ascertain and limit Titan's outstanding tax obligations, all without notifying Plaintiff or otherwise providing him an opportunity to respond to DRT's actions. (*Id.* ¶¶ 57-75.)

(5) DRT and Titan negotiated and ultimately arrived at a settlement of Titan's delinquent taxes—at least $2.56 million in unpaid taxes, penalties, and interest—shortly before Titan filed for bankruptcy in March 2022, with Titan paying DRT $600,000 by check to settle Titan's tax liability. (*Id.* ¶¶ 76-84.)

(6) The settlement amount was premised on DRT's inability or refusal to calculate Titan's actual tax liability, intent to settle the claim to deprive Plaintiff of the maximum recovery under the Whistleblower Act, and larger strategy of retaliation against Plaintiff. (*Id.* ¶¶ 86-126; *see also id.* ¶¶ 129-37 (describing Whistleblower Act qui tam action against Carson Guam Corporation, in which Carson Guam Corporation remitted tax payments shortly after Plaintiff filed suit and DRT declined to intervene); *id.* ¶¶ 139-42 (alleging that DRT was negotiating compromise in Plaintiff's Whistleblower Act qui tam action against Permarch Guam, Inc.).)

Plaintiff set forth six claims against the DRT Defendants:

- Claim I, a 42 U.S.C. § 1983 claim based on the DRT Defendants' alleged knowing, willful interference with Plaintiff's statutory and property rights as to the qui tam action and the award therefrom (*id.* ¶¶ 144-50);

- Claim II, a 42 U.S.C. § 1983 claim based on the DRT Defendants' alleged conspiracy to deprive Plaintiff of his statutory and property rights (*id.* ¶¶ 152-58);

- Claim III, a claim for fraud in the inducement based on the DRT Defendants' alleged authorizing Plaintiff to prosecute the qui tam action before negotiating and settling the underlying claim, to Plaintiff's detriment (*id.* ¶¶ 160-64);

- Claim IV, a claim for intentional inference with prospective relations based on the DRT Defendants' alleged interference with Plaintiff's relationship with DRT (*id.* ¶¶ 166-72);

- Claim V, a claim for fraud by nondisclosure based on the DRT Defendants' alleged concealment of material facts related to Plaintiff's qui tam claim and deliberate silence concerning DRT's negotiations with Titan (*id.* ¶¶ 174-81); and

- Claim VI, a claim for negligence based on the DRT Defendants' alleged breach of their legal duties (*id.* ¶¶ 183-86).

On June 15, 2023, the DRT Defendants moved to dismiss the Complaint in its entirety. (Defs.' Mot. to Dismiss, ECF No. 11.) By order dated July 11, 2024, the Court granted the DRT Defendants' motion in part and dismissed Plaintiff's claims only as to Defendant Villapando. (Decision & Order Granting Def. Villapando's Mot. to Dismiss, & Den. Defs. Mansapit-Shimizu & Lizama's Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 37.) The two remaining DRT Defendants (hereinafter "Defendants") filed their Answer to the Complaint on July 16, 2024 (Answer of Defs. Mansapit-Shimizu & Lizama to Pl.'s Compl., ECF No. 40),[1] before filing a Notice of Appeal of the July 11, 2024 order three days later (Notice of Appeal, ECF No. 41).

While the interlocutory appeal was pending, on February 19, 2025, Plaintiff filed a Motion to Compel and for Sanctions, in which he contends that Defendants failed to comply with his discovery requests. (Mot. to Compel & for Sanctions, ECF No. 50.) Defendants filed a response to Plaintiff's Motion to Compel on March 12, 2025. (Resp. to Mot. to Compel, ECF No. 51.) Plaintiff filed a reply on March 26, 2025. (Reply to Opp'n to Mot. to Compel & for Sanctions, ECF No. 54.)

Three months later, the Ninth Circuit issued a memorandum opinion disposing of the interlocutory appeal, holding that Defendants were not immune under the defense of qualified immunity from Plaintiff's due process claim premised on the DRT Defendants' alleged failure to notify Plaintiff of DRT's settlement of his Whistleblower Act qui tam claim against Titan and his

---

[1] By the time of filing of the Answer, Defendant Mansapit-Shimizu had retired from DRT, with Defendant Lizama assuming the position of DRT Director. (*See* Answer ¶¶ 2, 3; *see also* Mem. Decision & Order Den. Defs.' Request to Present Witness Testimony at Oral Arg. 4, ECF No. 65; Decl. of Marie P. Lizama ¶ 2, ECF No. 70-1.)

protected property interest in the settlement proceeds. (Mem., ECF No. 55.) The Ninth Circuit's mandate issued on August 21, 2025. (Mandate, ECF No. 59.)

Defendants then filed a request for oral argument on Plaintiff's Motion to Compel, which request also sought leave for Defendants to identify and present DRT employees to testify at oral argument. (Defs.' Request for Oral Arg. on Pl.'s Mot. to Compel, ECF No. 60.) The Court calendared Plaintiff's Motion to Compel for a hearing to take place on September 30, 2025 (Notice, ECF No. 61), and set a virtual status conference for September 16, 2025, to ascertain the scope and propriety of Defendants' proposed evidentiary presentation. (Notice of Hr'g, ECF No. 62.) On September 12, 2025, Plaintiff filed an opposition to the remaining DRT Defendants' request to put on witness testimony at oral argument. (Opp'n to Request to Call Witnesses, ECF No. 63.) Thereafter, at the September 16, 2025 virtual status conference, the Court orally denied Defendants' request to put on testimony at the hearing on Plaintiff's Motion to Compel and advanced said hearing by one day (*see* Mins., ECF No. 64), and subsequently issued a written order memorializing its ruling (*see* Mem. Decision & Order Den. Defs.' Request to Present Witness Testimony at Oral Arg., ECF No. 65).

On September 25, 2025, Defendants filed a Notice of Potential Judicial Conflict, in which they asserted that recusal of the undersigned is required because one Maryann J.A. Manglona, CPA—the undersigned's niece—is a material witness. (Notice of Potential Jud. Conflict, ECF No. 66). The following day, Plaintiff filed a declaration opposing recusal. (Decl. of Braddock J. Huesman in Resp. to Notice of Potential Jud. Conflict, ECF No. 67.) The Court calendared Defendants' Notice and Plaintiff's Declaration for the same date and time as the hearing on Plaintiff's Motion to Compel. (Notice of Hr'g, ECF No. 68.)

At the September 29, 2025 hearing, the Court ordered Defendants to file a formal motion for recusal, further ordered the Parties to file supplemental briefing on the effect of the Ninth Circuit's interlocutory decision on Plaintiff's Motion to Compel, and set an October 21, 2025 hearing date on Defendants' forthcoming motion for recusal and Plaintiff's Motion to Compel. (*See* Mins., ECF No. 69.)

Defendants filed their Motion for Judicial Disqualification (ECF No. 70) on October 3, 2025, to which Plaintiff filed a Response (ECF No. 72) a week later and Defendants filed a Reply (ECF No. 75) and accompanying Declaration (ECF No. 76) on October 15, 2025. Plaintiff filed his Supplemental Briefing on his Motion to Compel (ECF No. 71) on October 7, 2025. Defendants filed their Supplemental Briefing (ECF No. 73), including a Renewed Motion to Dismiss and accompanying Declaration (ECF No. 74), on October 14, 2025. Plaintiff filed a Reply (ECF No. 77) two days later.

## II.     ANALYSIS

As Defendants' Motion for Judicial Disqualification directly challenges the ability of the undersigned to continue to preside over this matter, the Court will first address Defendants' Motion for Judicial Disqualification before turning to Plaintiff's Motion to Compel.

### A. Defendants' Notice of Potential Judicial Conflict and Motion for Judicial Disqualification (ECF Nos. 66, 67, 70, 72, 75, 76)

#### 1. The Parties' Arguments

Defendants move under two provisions of 28 U.S.C. § 455 and Canon 3 of the Code of Conduct for United States Judges for mandatory disqualification of the undersigned from this case. (Mot. for Jud. Disqualification, ECF No. 70; *see also* Notice of Potential Jud. Conflict, ECF No. 66.) Defendants contend that disqualification is required because Ms. Maryann J.A. Manglona, CPA, is a niece to the Court, was employed by DRT as a DRT Tax Examination Supervisor up to

July 13, 2023, and in the course of her employment, supervised DRT's tax audit activities, including "managing the employees and Revenue Agents of DRT and reviewing and supervising the preparation of audit reports." (Mot. for Jud. Disqualification 2; *see also* Notice of Potential Jud. Conflict 1-2.) Defendants highlight that:

> It is [the audit of Titan] and the actions taken by DRT as a result that Plaintiff John Ryan complains about. Supervisor Manglona was not a DRT staff employee with no knowledge or involvement in the Titan or Permarch cases. She was the supervisor in charge of DRT's audit and examination of Titan and Permarch. She is a material witness who was named by DRT in its Rule 26 Initial Disclosures, and it is expected that she will be called to testify as a defense witness at trial. At a minimum, her testimony will cover the scope of the Titan and Permarch audits, the years those taxpayers were audited, the amount of [Business Privilege Taxes ("BPT")] that they may have allegedly owed or not owed, and what communications (if any) that she or her staff had with them. Supervisor Manglona will also testify as to any knowledge she may have about Carson.

(Mot. for Jud. Disqualification 4-5.)

In opposition, Plaintiff contends that Ms. Manglona is not a necessary or material witness. First, Plaintiff notes that Ms. Manglona cannot be a Fed. R. Civ. P. 30(b)(6) witness designated to testify on behalf of DRT because she is not employed by DRT. (Resp. to Mot. for Disqualification 2.) Second, Plaintiff contends that Defendants misunderstand what is at issue in this case, and thus have failed to put forward any colorable suggestion that Ms. Manglona "was the decisionmaker regarding DRT's actions regarding Mr. Ryan" that is the basis for Plaintiff's suit:

> It appears from the information provided that Ms. Manglona was in control of her section. But the problem here, and the reason Mr. Ryan sued the DRT Defendants, is that the state-law claims and the civil rights violation comes from the person making decisions or running the machine—not a cog in that machine. . . .
>
> What the DRT Defendants do not appear to fully understand is that Mr. Ryan was not damaged by an audit. Mr. Ryan was damaged by whoever told Ms. Manglona to do the audit and then didn't tell Mr. Ryan that the DRT was doing an audit to set the value of the claim assigned to him. The essence of the federal claim is

that Mr. Ryan never had notice and opportunity to respond to DRT's decision to deny his award. The essence of the state claims is that the DRT asked Ryan to pursue its claim for an award and then the DRT Defendants secretly went about interfering in the hope of avoiding DRT's payment of an award. Had the DRT Defendants not crept around secretly without notice, had they told him they were proceeding administratively—and were going to deprive him of his statutorily mandated award—he would have been able to appeal administratively and avoid collaterally litigating the issue. But instead of following any legal process, they obfuscated while directing Mr. Ryan to expend resources on behalf of DRT, including discovery and hiring an expert—for which they knew he would never be able to recover given their actions.

(*Id.* at 5-6; *see also id.* at 7-9.) Plaintiff reiterates a request that, should disqualification be necessary, that the case be reassigned immediately and all discovery deadlines be extended. (*Id.* at 9-10; *see also* Decl. of Braddock J. Huesman in Resp. to Notice of Potential Jud. Conflict ¶ 9, ECF No. 67.)

In reply, Defendants criticize Plaintiff's arguments as being inconsistent with Plaintiff's allegations in the Complaint—namely, that Plaintiff's Complaint alleges harms arising from DRT's decisions concerning the appropriate timeframe for determining Titan's tax liability—and that Ms. Manglona has material information bearing on Defendants' defenses to such allegations. (Reply in Supp. of Mot. for Jud. Disqualification 2-3, ECF No. 75.) Defendants further contend that the Ninth Circuit's interlocutory decision affirmed their position that "DRT did nothing wrong" in not giving any notice to Plaintiff concerning DRT's decision to audit Titan and pursue an alternative remedy to the qui tam action. (*Id.* at 3.) Defendants also speculate as to the exact relationship to a likely material witness that triggered the Hon. Michael J. Bordallo's recusal from this matter and contend that Magistrate Judge Bordallo's relationship "is not any closer than the Court's relationship with Ms. Manglona[.]" (*Id* at 3-4.)

### 2. Legal Standard

In relevant part, 28 U.S.C. § 455 provides:

> **(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> **(b)** He shall also disqualify himself in the following circumstances:
>
>> [. . .]
>>
>> **(5)** He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>>
>>> [. . .]
>>>
>>> **(iv)** Is to the judge's knowledge likely to be a material witness in the proceeding.
>
> [. . .]
>
> **(e)** No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

28 U.S.C. § 455(a), (b)(5)(iv), (e). The Ninth Circuit has explained:

> The relationship between section 455(a) and section [455(b)] is not complicated. As we said in *Herrington v. Sonoma County*:
>
>> Section 455(a) covers circumstances that *appear* to create a conflict of interest, whether or not there is actual bias. *Davis v. Xerox*, 811 F.2d 1293, 1295 (9th Cir. 1987). Section 455(b) covers situations in which an *actual* conflict of interest exists, even if there is no appearance of one. *Id.* Section 455(b) also describes situations that create an *apparent* conflict, because it provides examples of situations in which a judge's 'impartiality might reasonably be questioned' pursuant to section 455(a). *See United States v. Conforte*, 624 F.2d 869, 880-81 (9th Cir.), *cert. denied*, [449 U.S. 1012 (1980)].
>
> *Herrington v. Sonoma County*, 834 F.2d 1488, 1502 (9th Cir. 1987).

> For our purposes, it is sufficient to state that section 455(b) provides us with a concrete example where the appearance of partiality suffices to establish a ground for recusal under section 455(a) even absent actual bias. *Cf. United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980) (section 455(b)(1) provides specific example of situation in which a judge's impartiality might reasonably be questioned).

*Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991).

A party seeking to disqualify a judge under 28 U.S.C. § 544 bears the burden of alleging facts showing that recusal is warranted; mere "conclusionary statements and personal opinions" about an alleged "close association" are insufficient. *Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir. 1981). Recusal under 28 U.S.C. § 455(a) is assessed under "an objective test based on public perception," namely, "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might be reasonably be questioned." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (first quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988), then quoting *Clemens v. U.S. Dist. Ct.*, 428 F.3d 1175, 1178 (9th Cir. 2005)). In contrast, recusal under 28 U.S.C. § 455(b) is assessed under a "subjective standard"—a "test for actual bias" that "requires each judge in such a situation to set aside emotion and thoughtfully examine his ability to impartially 'administer justice without respect to persons.'" *Id.* at 915 (quoting 28 U.S.C. § 453). "If he feels there is a risk of prejudice, it is incumbent on him to recuse himself from the case . . . ." *Id.*

//
//
//
//
//
//

### 3. Discussion

Here, the Court finds that recusal is not required under either 28 U.S.C. § 455(a) or 28 U.S.C. § 455(b)(5)(iv).[2] As to the latter provision,[3] for recusal to be required, Ms. Manglona must not only be "within the third degree of relationship" with the undersigned, 28 U.S.C. § 455(b)(5), but also "likely to be a material witness in the proceeding," *id.* § 455(b)(5)(iv). The Parties and the undersigned do not dispute that Ms. Manglona is within three degrees of relationship to the undersigned; thus, the issue is whether Ms. Manglona is a likely material witness.

Ms. Manglona is not a likely material witness. "A material witness is '[a] witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about those matters.'" *Williams v. Stewart*, 441 F.3d 1030, 1055 (9th Cir. 2006) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004)). The Parties' dispute on this issue turns

---

[2] Ordinarily, a party seeking disqualification must make their motion in a "timely fashion." *Preston*, 923 F.2d at 733 (explaining that timeliness requirement is premised on avoidance of "increased instances of wasted judicial time and resources" and "heightened risk that litigants would use recusal motions for strategic purposes"); *see also United States v. Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997) (applying timeliness requirement for 28 U.S.C. § 144 motions to 28 U.S.C. § 455 motions).

Here, however, the Court need not address the timeliness of Defendants' request for disqualification in view of the Parties' apparent agreement about their inability to ascertain Ms. Manglona's role in the litigation until recently, *see Preston*, 923 F.2d at 733 (movant's uncontroverted assertion of belatedly discovering basis for recusal rendered recusal motion timely); *but cf. Rogers*, 119 F.3d at 1381-83 (recusal motion untimely where movant knew of basis for recusal for at least seventeen months prior to filing motion and did not file motion until after adverse ruling), and the "self-enforcing duty on the judge" to ascertain whether disqualification is required, *United States v. Conforte*, 624 F.2d 869, 880 (9th Cir. 1980). *See also, e.g.*, *Rogers*, 119 F.3d at 1383 (addressing merits of recusal motion after deeming motion to be inexcusably untimely); *Wood*, 644 F.2d at 802 (finding recusal motion to lack factual support after rejecting motion as untimely).

[3] In both their initial Notice of Potential Judicial Conflict and subsequent Motion for Judicial Disqualification, Defendants do not acknowledge the differing standards for assessing disqualification under the various provisions of 28 U.S.C. § 455—even though they cite and quote *United States v. Holland*, 519 F.3d 909 (9th Cir. 2008), which differentiates between the objective test for recusal under 28 U.S.C. § 455(a) and the subjective test under 28 U.S.C. § 455(b). *Holland*, 519 F.3d at 914-15. Defendants' arguments largely bear on 28 U.S.C. § 455(b); as such, and in addition to the unwaivable nature of any basis for disqualification under 28 U.S.C. § 455(b), *see* 28 U.S.C. § 455(e), the Court addresses disqualification under 28 U.S.C. § 455(b) first before turning to disqualification under 28 U.S.C. § 455(a).

on the nature of Plaintiff's claims, as alleged in the Complaint and pared down by the Ninth Circuit's interlocutory decision. A careful reading of the Complaint shows that although Plaintiff's allegations do touch upon discrepancies concerning Titan's actual tax liability, as compared to the final settlement amount with DRT (*see* Compl. ¶¶ 63, 78, 82-94), and further criticize DRT's decision to settle the qui tam litigation after declining to intervene in the same (*see, e.g.*, *id.* ¶ 73), Plaintiff's claims are based on his interest in the statutory award upon DRT's settling the qui tam litigation and attorneys' fees and costs Plaintiff expended in reliance on DRT's declining to intervene in the qui tam litigation and without notice of DRT's acts in settling the qui tam litigation. (*See id.* ¶¶ 148, 149, 155-57, 164, 169-71, 177-80, 185.) Insofar as Plaintiff's Complaint could be read to touch upon injuries arising from DRT's act of settling the claim and compromising the qui tam action—*e.g.*, that Plaintiff would have received more proceeds under the Whistleblower Act from a properly calculated (larger) tax liability amount—the Ninth Circuit's interlocutory decision held that Defendants are "entitled to qualified immunity for any alleged due process violations arising from Ryan's interest *in the action itself*[,]" *i.e.*, that DRT had the "right to pursue any alternate remedy, which may include settlement with the delinquent taxpayer," and that such right is not subject to judicial scrutiny. (Mem. Op. 4-5 (emphasis added), ECF No. 55.) The Ninth Circuit also expressly held, however, that "Ryan was entitled—at a minimum—to notice that DRT settled his claim upon its receipt of $600,000 from Titan Imports, Inc.," and that Defendants "are not entitled to qualified immunity for their failure to provide notice of the settlement." (*Id.* at 6.) As such, as Plaintiff correctly reiterates in his Response to Defendants' Motion for Judicial Disqualification (*see* ECF No. 72, at 5-9), the material information is not the specifics of any audit DRT conducted or how the appropriate settlement amount was determined, but rather information pertaining to DRT's decision to not inform Plaintiff of the settlement and effectively terminate his

qui tam action and subsequent alleged conduct that misled and prolonged Plaintiff's litigation in Superior Court and Bankruptcy Court at Plaintiff's expense. In other words, this case does not deal with the factual predicate concerning how much in taxes Titan owed; instead, this case deals with what Defendants did to engage in Titan in settlement discussions without notifying Plaintiff of these discussions, and their acceptance of the $600,000 payment that compromised the Government of Guam's tax claim against Titan, which claim had been litigated by Plaintiff up to that point and continued to be litigated by Plaintiff even after Defendants accepted the $600,000 payment.

Defendants' proffered likely scope of Ms. Manglona's testimony does not show that her testimony is material. Defendants have not put forward any competent showing that Ms. Manglona was involved in the decision to not notify Plaintiff about the settlement discussions, any decision concerning DRT's representations to Plaintiff in any judicial proceedings, or any decision to not pay Plaintiff whatsoever after the $600,000 payment was received. Ms. Manglona does not appear to be able to testify about the consequential decision(s) Defendants—as the director and deputy director of DRT—made to negotiate and authorize settlement of tax liabilities or Defendants' apparent reliance on advice of counsel. (*See, e.g.*, Answer ¶ 80 (admitting that DRT could not have settled a multimillion-dollar tax claim without the approval of Defendants); *id.* ¶ 81 (admitting that DRT employees took instructions from Defendants).) To the extent that Ms. Manglona's testimony could be relevant, her testimony would be marginally relevant only as to giving any background or context concerning how the tax liability was calculated—matters that do not bear on the remaining parts of Plaintiff's claims that may still proceed on remand and may otherwise be established by other witnesses within DRT's control. *See Williams*, 441 F.3d at 1055

(witness's testimony must be related to *consequential* facts and be based on knowledge that is known by "few others, if any" to be material).

In support of the Motion for Judicial Disqualification, Defendant Lizama—as the current DRT Director and Acting Director from 2021 to 2024—submitted a declaration attesting to the position description and qualifications for a DRT Revenue Agent IV and DRT Examination Supervisor alongside the duties and responsibilities of the Examination Supervisor, the position Ms. Manglona held until July 13, 2023. (Decl. of Marie P. Lizama, ECF No. 70-1.) However, nowhere does Defendant Lizama attest to having Ms. Manglona participate in the discussions that led to the decision not to notify Plaintiff about the negotiations or the actual settlement with Titan.

In addition, Defendants submitted a declaration by DRT Revenue Agent IV Evelyn Villapando, in which Ms. Villapando attests that "Titan's BPT returns were referred for an examination on or about December 18, 2019." (Decl. of Evelyn Villapando ¶ 4, ECF No. 70-2.) This referral occurred *after* Plaintiff filed his qui tam action in the Superior Court on November 5, 2019. (Compl., Ex. A (Verified Complaint in Plaintiff's qui tam action against Titan), ECF No. 1-1.) Notably, Ms. Villapando does not identify who referred the returns for an examination. Although she identifies Ms. Manglona as the Supervisor who oversaw the audit examination of Titan (Decl. of Evelyn Villapando ¶ 6), it appears that Ms. Villapando actually performed the Titan audit and therefore has personal knowledge about the details of the matter. (*See id.* ¶ 7 ("Supervisor Manglona *also* oversaw *my* audit examination of taxpayer Permarch Guam, Inc.'s BPT returns." (emphasis added)).) The Court notes that on January 6, 2020, two months after Plaintiff filed his qui tam action in Superior Court, DRT—through the Government of Guam— filed its notice of declination to intervene in the qui tam action. (Compl., Ex. B (Government of Guam's Notice of Declination to Intervene), ECF No. 1-2.) Despite such notice, DRT continued

its audit of Titan, which audit did not conclude until January 20, 2022. (Decl. of Evelyn Villapando ¶ 6.) The Superior Court unsealed Plaintiff's qui tam lawsuit on January 10, 2020, and recognized Plaintiff as the relator "prosecuting this matter." (Compl., Ex. C (Superior Court order in Titan qui tam action filed January 10, 2020), ECF No. 1-3.) In 2021, DRT's counsel—then-Deputy Attorney General James L. Canto II—was given notice that DRT refused to produce "Titan's GRT-3 filings due to Guam law" despite Plaintiff providing DRT's counsel the Guam legal authority which would allow him to access Titan's tax records and assist him in prosecuting the qui tam action on behalf of DRT and the Government of Guam. (Compl., Ex. F (Mar. 19, 2021 letter from Plaintiff's counsel to Deputy Attorney General Canto), ECF No. 1-6.) It was not until Titan filed its bankruptcy in 2022 that Plaintiff first learned about the "secret pre-[bankruptcy] petition communications between the DRT Defendants and the Other Defendants." (Compl. ¶ 60.) Namely, on May 2, 2022, Titan's representatives in its bankruptcy case—Mr. John Antenocruz and Mr. Roland Aranda—testified that Titan made a $600,000 payment to DRT as an Offer in Compromise to settle the entirety of Titan's "delinquent beverage tax claim." (Compl., Ex. G, at 19-23 (transcript of 341 creditors meeting in Titan's bankruptcy case), ECF No. 1-7.) Titan made this payment on March 1, 2022, less than two months after DRT's audit was completed on January 20, 2022.

As for the other two qui tam actions relating to Plaintiff's claims, Ms. Villapando conducted the audit examination for Permarch Guam and does not know of any "referral to the Examination Branch to audit Carson." (Decl. of Evelyn Villapando ¶¶ 7-10.)

As Defendants previously recognized, "[u]nlike in his Superior Court actions, [Plaintiff] does not come before the Court in this matter as a *qui tam* whistleblower. Rather, he is an ordinary civil plaintiff asserting causes of action against DRT that are founded in, among other things, the

torts of fraud, negligence, and contractual interference." (Resp. to Mot. to Compel 1-2, ECF No. s51.) One legal basis for Plaintiff's state-law civil claims was recognized by the Ninth Circuit in its decision on interlocutory appeal in this case: "Under Guam's statute, when the government pursues an alternate remedy, the relator 'shall have the same rights in such proceeding as he would have had if the qui tam action had continued.'" (Mem. Op. 5 (brackets omitted) (quoting 5 Guam Code Ann. § 37203(e)).) Because this is not a tax case, but a civil case, the materiality of any witness's testimony is on the issue of who made the decision for DRT to pursue an alternate remedy *without* according Plaintiff "the same rights" in this alternate remedy "as he would have had if the qui tam action had continued." 5 Guam Code Ann. § 37203(e). Who made the decision for DRT to withhold the full $600,000 payment from Titan and not give notice to Plaintiff? Neither Defendant Lizama nor Ms. Villapando's declarations may any statement that implicates Ms. Manglona's involvement in such decisions. Therefore, the conditions for mandatory disqualification under 28 U.S.C. § 455(b)(5)(iv) are not met. Based on the facts in this case, Defendants have failed to establish how Ms. Manglona is a material witness—a "witness who can testify about matters having some logical connection with the consequential facts, [especially] if few others, if any, know about those matters." *Williams*, 441 F.3d at 1055.

As to disqualification under 28 U.S.C. § 455(a), the Court finds that there is no appearance of bias warranting disqualification because a reasonable person with knowledge of all the facts—namely, the lack of any showing of Ms. Manglona's involvement in the DRT's decisions giving rise to Plaintiff's alleged injuries—would not "perceive[] a significant risk that the judge will resolve the case on a basis other than the merits." *Holland*, 519 F.3d at 913 (quoting *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990)). *See also id.* ("The standard 'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated

suggestion of personal bias or prejudice.'" (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993))).

As such, Defendants have failed to meet their burden to show that disqualification is warranted. Nor does the Court discern a basis in the record for recusal. Accordingly, Defendants' requests for disqualification or recusal, as set forth in their Notice of Potential Judicial Conflict (ECF No. 66) and Motion for Judicial Disqualification (ECF No. 70), are DENIED.

**B. Plaintiff's Motion to Compel (ECF Nos. 50, 51, 53, 54, 71, 73, 74, 77)**

**1. The Parties' Arguments**

Plaintiff contends that Defendants, through Defendant Lizama, failed to answer twelve interrogatories and twenty requests for production of documents ("RPD") as set forth in his November 15, 2024 discovery requests. (Mot. to Compel 2, ECF No. 50; *id.* at 5-13 (Interrogatory Nos. 4-7, 11-13, 18-21, 25); *id.* at 13-16 (RPD Nos. 1-13, 16-21, 30).) Plaintiff accordingly moves for three forms of relief: (1) an order compelling Defendant Lizama to respond to his discovery requests; (2) an award of fees and costs for bringing his Motion to Compel; and (3) sanctions against Defendant Lizama "to deter similar behavior." (*Id.* at 2.)

In their Response to Motion to Compel, Defendants contend that Plaintiff's discovery requests seek privileged, non-discoverable, or nonexistent information (Resp. to Mot. to Compel 3-4, 6-8, ECF No. 51), are otherwise barred by sovereign immunity (*id.* at 5-6, 8), or constitute an end-run around the limits on the number of requests a party may propound (*id.* at 4-5, 7). Defendants further contend that their responses are complete and appropriate. (*Id.* at 2-4.)

In reply, Plaintiff contends that Defendants' objections have been waived (Reply to Opp'n' to Mot. to Compel 3, 7, ECF No. 54), are unsupported by law or fact (*id.* at 3-6, 8-10), and premised on a misreading of his claims (*id.* at 7).

17

In Plaintiff's Supplemental Briefing, Plaintiff recounts the procedural history of this case (Pl.'s Suppl. Br. 2-5, ECF No. 71) before contending that Defendants did not, and continue to not, have any basis to withhold discovery, even in view of the Ninth Circuit's rejection of the portions of his claims based on his interest in the qui tam action itself. (*Id.* at 6-11.) Plaintiff then requests that the Court grant his Motion to Compel in its entirety in view of Defendants' continuing refusal or willful failure to provide discovery. (*Id.* at 11.)

In Defendants' Supplemental Briefing, Defendants first represent that DRT has made payments to Plaintiff while this case has been pending. (Defs.' Suppl. Br. 4-5, ECF No. 73.) Defendants then make a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) based on their reading of the Ninth Circuit's interlocutory decision as precluding Plaintiff's two federal claims (*id.* at 5-9), Plaintiff's remaining state-law claims being variations of the federal claims (*id.* at 9), and Plaintiff's lack of substantial likelihood of success as foreclosing his count for injunctive relief (*id.* at 10-11). As to Plaintiff's Motion to Compel, Defendants contend that the dismissal of Plaintiff's claims render any discovery related to such dismissed claims as irrelevant and not discoverable.[4] (*Id.* at 11.)

In his supplemental reply brief, Plaintiff contends that Defendants misread the Ninth Circuit's interlocutory decision and set forth unsupported arguments (Reply Re: Suppl. Br. 3-7, ECF No. 77), and that all of his claims remain live on remand (*id.* at 7-11). Plaintiff concludes by reiterating his request for his Motion to Compel to be granted in its entirety and attorneys' fees be assessed. (*Id.* at 11-12.)

---

[4] The Court need not address the Renewed Motion to Dismiss in view of Defendants' withdrawal of the Renewed Motion on October 29, 2025. (*See* Notice of Withdrawal of Renewed Motion to Dismiss Pursuant to FRCP 12(b)(6), ECF No. 79.)

### 2. Legal Standard

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Where a party "fails to answer a question asked under Rule 30 or 31," "fails to answer an interrogatory under Rule 33," or "fails to produce documents . . . as requested under Rule 34," the proponent of the discovery requests "may move for an order compelling an answer, designation, [or] inspection[.]" *Id.* 37(a)(3)(B); *see also id.* 37(a)(4) (treating an "evasive or incomplete disclosure, answer, or response" as "a failure to disclose, answer, or respond" for the purposes of Rule 37(a)).

Where a motion to compel is granted "or requested discovery is provided after the motion was filed," the "party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both" must "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.* 37(a)(5)(A). Conversely, where a motion to compel is denied, "the movant, the attorney filing the motion, or both" must "pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." *Id.* 37(a)(5)(B). "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." *Id.* 37(a)(5)(C).

Rule 37(b) authorizes the imposition of sanctions against a party who "fails to obey an order to provide or permit discovery[.]" *Id.* 37(b)(2)(A). Although "[a] Rule 37(a) motion is not a prerequisite to a Rule 37(b) sanction," *Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch.*

19

*Council, Inc.*, 727 F.2d 1470, 1474 (9th Cir. 1984), "Rule 37(b)(2)'s requirement that there be some form of court order that has been disobeyed has not been read out of existence[,]" *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). In other words, sanctions pursuant to Rule 37(b) are not available where no court order concerning discovery has issued. *See also id.* (explaining that the definition of "order" in Rule 37(b) is construed broadly, but that "Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse").

### 3. Discussion

#### a. Preliminary Matters: Rule 37(b) Sanctions & Impact of Interlocutory Appeal

As a first preliminary matter, as indicated in the Court's previous Memorandum Decision and Order (*see* ECF No. 65, at 4), the Court cannot grant Plaintiff's request for sanctions to deter further discovery misconduct. Rule 37(b) requires the existence of "an order to provide or permit discovery" before any sanctions may issue. Fed. R. Civ. P. 37(b); *Unigard*, 982 F.2d at 368. No such order has yet been entered. As such, the Court cannot impose sanctions pursuant to Rule 37(b) against Defendants at this juncture. Plaintiff's Motion to Compel is therefore DENIED IN PART as to Plaintiff's request for sanctions against Director Lizama "in her official capacity in an amount sufficient to deter similar behavior." (Mot. to Compel 2.)

As a second preliminary matter, the Court must address the impact of the Ninth Circuit's decision on interlocutory appeal of this Court's denial of Defendants' qualified immunity defense.[5] As to Plaintiff's first claim for relief pursuant to 42 U.S.C. § 1983 (*see* Compl. ¶¶ 143-50), this claim survives Defendants' assertion of qualified immunity based on Plaintiff's clearly established right to his property interest in the statutory award, including penalties and interest, his attorneys'

---

[5] *See also supra* Part II-A-3, at pp. 11-13.

fees, expenses, and costs. (*See* Mem. Op. 5-6.) Defendants' qualified immunity defense, however, applies to the second basis for the same § 1983 claim—Plaintiff's asserted right to conduct the qui tam action and interest in the qui tam action itself—and Defendants are entitled to qualified immunity for any alleged due process violations arising from such right and interest. (*See id.* at 3-5.) Similarly, Plaintiff's second claim for relief pursuant to 42 U.S.C. § 1983, premised on Defendants' conspiracy with Titan and others to deprive Plaintiff of his due process rights as to the same statutory award and attorneys' fees, survives. Finally, Plaintiff's state-law claims and prayer for injunctive relief remain live as Defendants' qualified immunity defense does not apply to such claims or relief.

The Court now turns to each of the discovery requests Plaintiff identifies.[6]

### b. Interrogatories

Interrogatory No. 4: Plaintiff sought Defendants to "[i]dentify any steps taken to implement a litigation hold policy or otherwise preserve Materials that are discoverable under Rule 26(b) based on the Complaint, including any alterations to routine operations of an electronic information system." (Mot. to Compel 6.) Defendant Lizama responded with a single sentence: "Objection. This interrogatory seeks information protected by the attorney-client privilege and/or which constitutes protected attorney work product." (Mot. to Compel, Ex. C, at 4, ECF No. 50-4). Plaintiff complains that Defendant Lizama's objection is overbroad, unsupported by any privilege log, and contrary to Guam law concerning public access to government documents.

---

[6] Plaintiff's Motion to Compel satisfies Rule 37(a)(1)'s requirement that any motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). (*See* Mot. to Compel 2 (certifying that Plaintiff and counsel met and conferred with Defendants' counsel on January 29, 2025, whereupon Plaintiff gave Defendant Lizama an additional two weeks to amend her responses or state "meritorious objection[s]," and that Defendant Lizama did not do so by the end of the two-week extension or by February 19, 2025, the date of filing of the Motion to Compel).)

(Mot. to Compel 6; Reply to Opp'n to Mot. to Compel 2-4.)  Defendants contend that the litigation hold policy is not discoverable, but that details surrounding the litigation are discoverable, and represent that DRT would search for its litigation hold procedures and provide Plaintiff with details concerning the policy.  (Resp. to Mot. to Compel 2-3; *but see* Reply to Opp'n to Mot. to Compel 3 (representing that DRT failed to provide any information after search).)

Plaintiff's Motion to Compel is GRANTED as to Interrogatory No. 4 and Defendant Lizama is ORDERED to answer the interrogatory.  It is unclear how all possible steps for implementing DRT's litigation hold policy (if any exists) would be protected by attorney-client privilege or fall within the attorney work-product doctrine.  If Defendant Lizama intends to assert privileges, she must comply with the strictures of Fed. R. Civ. P. 26(b)(5).

<u>Interrogatory Nos. 5 and 6</u>:  Plaintiff asked for "all internal communication" and "all external communication" "relating in any way" to his Whistleblower Act qui tam claims.  (Mot. to Compel 7.)  Defendant Lizama responded to both interrogatories by first objecting to Plaintiff's "definition and characterization of 'Assigned Claims'" before invoking the attorney-client privilege and attorney work-product doctrine.  (Mot. to Compel, Ex. C, at 4.)  Plaintiff complains that Defendant Lizama's objections are overboard and unsupported by any showing that the privileges apply to every communication falling within the scope of the interrogatories.  (Mot. to Compel 6-9; Reply to Opp'n to Mot. to Compel 4-5.)  Defendants concede that they are required to produce a privilege log to support their objections and further represent that DRT agrees to work with Plaintiff "on the parameters of a privilege log that would cover the discovery requests and responses of both parties, not just DRT."  (Resp. to Mot. to Compel 3-4.)

Plaintiff's Motion to Compel is GRANTED as to Interrogatory Nos. 5 and 6 and Defendant Lizama is ORDERED to answer the interrogatories.  Defendant Lizama failed to comply with—

at the very least—Fed. R. Civ. P. 26(b)(5)'s provisions concerning invocations of privilege. Defendants' offer to work with Plaintiff does not absolve them of their initial responsibility to search for, identify, and produce the discovery. A party cannot condition their production on hypothetical arrangements with the other parties in the litigation.

Interrogatory No. 7: Plaintiff sought Defendants to identify "all Offers in Compromise regarding alcohol or tobacco taxes [DRT] granted in the last ten (10) years." (Mot. to Compel. 9.) Defendant Lizama flatly denied that any such "Offers in Compromise" existed. (Mot. to Compel, Ex. C, at 5.) Plaintiff contends that Defendant Lizama's response is false. (Mot. to Compel 9.) Defendants assert that her response was true based on a definition drawn from federal income tax law, which definition appears[7] to exclude the agreement(s) Plaintiff seeks. (Resp. to Mot. to Compel 4.) Plaintiff replies by pointing to the definition of "Offers in Compromise" he set forth in his interrogatories. (Reply to Opp'n to Mot. to Compel 5-6; *see also id.*, Ex. H, at 7-8, ECF No. 54-2 (defining "Offer(s) in Compromise" as "any negotiated divergence from the total tax with interest and penalties that an individual or entity rightfully owed as agreed to by [DRT]. An offer in compromise does not have to be in writing, but should be affiliated with at least one payment of taxes to [DRT].").)

Plaintiff's Motion to Compel is GRANTED as to Interrogatory No. 7 and Defendant Lizama is ORDERED to answer the interrogatory using the definition for "Offers in Compromise" as set forth by Plaintiff. Plaintiff's interrogatory is plainly relevant and reasonably calculated to lead to the discovery of admissible evidence, as his claims here concern DRT's practice of

---

[7] Defendants appear to assert a definition that encompasses "agreements where the taxpayer pays less than what he owes" but also do not constitute "a settlement agreement or an installment agreement." (Resp. to Mot. to Compel 4 (emphasis removed).) Without more explanation, such a definition appears internally inconsistent and incoherent—or a means for DRT to unilaterally select what agreements to disclose—as it is unclear how any agreement for a taxpayer to settle their delinquency by paying an amount less than their outstanding liability would not qualify as "a settlement agreement."

negotiating settlements or compromises with delinquent taxpayers who are subject to Whistleblower Act qui tam actions prosecuted by Plaintiff. Defendant Lizama cannot ignore Plaintiff's definition as a means of avoiding discovery without lodging an appropriate objection.

Interrogatory Nos. 11, 12, and 13: Plaintiff sought Defendants to identify information supporting DRT's "never notify[ing] Mr. Ryan of any choice to exercise an alternate remedy" in his *Titan*, *Carson Guam*, and *Permarch Guam* Whistleblower Act qui tam actions. (Mot. to Compel 9 & n.2.) Defendant Lizama responded by noting that Defendants admitted that Plaintiff was never notified of any such "choice," denying that he was entitled under Guam law to be notified of a "choice," and citing Defendants' pleadings and appellate materials as the materials supporting Defendants' position. (Mot. to Compel, Ex. C, at 6-7.) Plaintiff complains that Defendant Lizama misstated the interrogatories and lodged an unsupported objection. (Mot. to Compel 10; Reply to Opp'n to Mot. to Compel 6-7.) Defendants contend that (1) the interrogatories are an attempt to circumvent Fed. R. Civ. P. 33(a)'s limit on the number of interrogatories; (2) any discovery related to Plaintiff's 42 U.S.C. § 1983 claim is stayed pending resolution of the interlocutory appeal; and (3) Plaintiff is "well aware of DRT's legal position" on the issues raised. (Resp. to Mot. to Compel 5-6.)

Plaintiff's Motion to Compel is DENIED as to Interrogatory Nos. 11, 12, and 13 and no further response from Defendant Lizama is necessary. Defendants admitted that they never gave any notice to Plaintiff in any of the three identified Whistleblower Act qui tam actions. As Defendants did not "deny" the requests for admission, Defendants need not provide any further responses. To the extent that the Parties dispute whether Plaintiff was entitled to notice of DRT's exercising an alternate remedy, that matter has been resolved by the Ninth Circuit's disposition of the interlocutory appeal or is otherwise not a discovery dispute.

Interrogatory No. 18: Plaintiff requested Defendants to provide information supporting DRT's response denying that it lacked a basis in fact to oppose an award in the *Carson Guam* Whistleblower Act qui tam action. (Mot. to Compel 10.) Defendant Lizama objected on the grounds that (1) whether there was a basis in fact to oppose an award "is a legal conclusion and/or matter that is not within the competence of Defendants to answer" and (2) the interrogatory called for matters protected by the attorney-client privilege. (Mot. to Compel, Ex. C, at 7.) Plaintiff contends that Defendant Lizama's objections are improper because (1) an interrogatory's request for a legal conclusion is not the basis for an objection; (2) Defendant Lizama failed to support her claim of privilege with specificity and a privilege log; and (3) any attorney-client privilege may have been waived or compromised by Defendants' affirmative defense of reliance on counsel. (Mot. to Compel 10-11; Reply to Opp'n to Mot. to Compel 7-8.) Defendants characterize Interrogatory No. 18 as an attempt by Plaintiff to have Defendants "admit [DRT's] legal defense theories and strategies," concede that DRT "assigned" the qui tam claims to Plaintiff, and circumvent the limit on number of interrogatories. (Resp. to Mot. to Compel 6-7.) Defendants, however, does not specifically raise any legal arguments in response to Plaintiff's arguments, instead merely including Interrogatory No. 18 alongside arguments that are specifically directed at Interrogatories Nos. 19-21. (*Id.* at 7-8.)

Plaintiff's Motion to Compel is GRANTED as to Interrogatory No. 18 and Defendant Lizama is ORDERED to answer the interrogatory. First, Plaintiff is correct that an interrogatory's call for a legal conclusion generally is not a valid basis for an objection. *See Thomas v. Cate*, 715 F. Supp. 2d 1012, 1029-30 (E.D. Cal. 2010) (collecting cases); *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ."); *id.* 36(a)(1)(A) (scope of requests for

admission may encompass "facts, the application of law to fact, or opinions about either"); *id.* 36(a)(5) ("A party must not object solely on the ground that the request presents a genuine issue for trial."). Case law indicates that the objection is valid only where the discovery request seeks to compel an admission of a "purely legal conclusion," *e.g.*, seeking an admission that certain conduct in the case is illegal instead of seeking admissions concerning the "underlying facts that may establish that the act was illegal." *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 14-cv-03078-JSC, 2015 WL 579688, at *2 (N.D. Cal. Feb. 11, 2015) (collecting cases). But Interrogatory No. 18 and related Request for Admission No. 50 are directed at whether DRT had a basis *in fact or in law* to oppose an award to Plaintiff in the *Carson Guam* qui tam action when Plaintiff was authorized to prosecute the qui tam action, yet Carson remitted payment directly to DRT; as such, the objection is not valid.

Second, Defendant Lizama failed to supply a privilege log. To the extent that Defendants' affirmative defense of reliance upon advice of counsel constitutes waiver of the attorney-client privilege, *see, e.g.*, *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1092-93 (D. Nev. 2003) (collecting cases),[8] the Court lacks the necessary information to make any determinations of waiver.[9]

---

[8] The Court further notes that waiver of attorney-client privilege due to a party's reliance on the advice of counsel does not automatically result in waiver of the work-product doctrine to the same scope and extent. *SNK Corp. of Am. v. Atlus Dream Ent. Co., Ltd.*, 188 F.R.D. 566, 571-72 (N.D. Cal. 1999) (grounding need for separate analyses based on "the work product doctrine and attorney-client privilege serv[ing] different purposes").

[9] Defendants' failure to support their invocations of privilege, on its own, is not a basis for deeming the privileges waived. Instead, the Court must consider a series of factors "in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and discovery process." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (listing factors). At this juncture, the Court need not address the holistic reasonableness analysis: Defendants raised their assertions of privilege, and permitting Defendants to develop their assertions in response to an order to compel would permit the Parties to identify whether any basis for Defendants' claimed privileges exist—especially in view of Defendants' advice of counsel defense—and for the Parties to then seek rulings concerning privilege, as necessary.

26

Interrogatory Nos. 19-21:  Plaintiff sought Defendants to produce information related to Defendants' denials that they "assigned" to him the "rights to collecting" the delinquent tax liability in his three qui tam actions.  (Mot. to Compel 11 & n.4.)  Defendant Lizama objected to all three interrogatories on the ground that Plaintiff's basis to proceed with the qui tam actions was "pursuant to the procedures set out in the [Whistleblower Act] and not by any legal 'assignment' made to him by Defendants or DRT."  (Mot. to Compel, Ex. C, at 8.)  Plaintiff contends that Defendant Lizama's objection is contrary to Defendants' counsel's previous claims, prior court orders, and case law relying upon the federal False Claims Act to interpret Guam's Whistleblower Act.  (Mot. to Compel 11-12; Reply to Opp'n 8-9.)  Defendants contend that the objections are appropriate because Plaintiff's right to prosecute the qui tam actions was indeed by operation of statute after DRT declined to intervene and, in any event, not only is discovery stayed pending appeal, but also Plaintiff's use of requests for admission is an attempt to circumvent the limit on number of interrogatories.  (Resp. to Mot. to Compel 6-8.)

Plaintiff's Motion to Compel is DENIED as to Interrogatory Nos. 19 to 21 and no further responses from Defendant Lizama is necessary.  Defendants explained that they denied that they had assigned any claims to Plaintiff based on their understanding of the Whistleblower Act vesting Plaintiff with the right to prosecute the qui tam actions after DRT declined to intervene.  The Parties' dispute about whether the recognition of Plaintiff's right to prosecute under the statute qualifies as DRT's "assignment" of the right is a legal dispute that is to be resolved elsewhere— *i.e.*, not in the context of discovery.  To the extent that Defendants' representations here are inconsistent with their prior statements, that is a matter for trial.

Interrogatory No. 25:  Plaintiff sought Defendants to identify "all procedures and policies [they] followed when negotiating or considering the Offer in Compromise with Titan Imports."

(Mot. to Compel 12.)  Defendant Lizama objected on the ground that "Defendants did not negotiate an Offer in Compromise with Titan Imports."  (Mot. to Compel, Ex. C, at 9.)  Plaintiff contends the response is insufficient because the interrogatory asked for not only information concerning any negotiation, but also *consideration* of any compromise in the *Titan* qui tam action, and that such consideration necessarily occurred as a consequence of DRT's rejection of an offer from Titan, as noted in DRT's filings on appeal and in Titan's bankruptcy matter.  (Mot. to Compel 12-13; Reply to Opp'n 9-10.)  Defendants do not respond to Plaintiff's arguments.

Plaintiff's Motion to Compel is GRANTED as to Interrogatory No. 25 and Defendant Lizama is ORDERED to answer the interrogatory.  Defendant Lizama failed to respond to the entirety of the interrogatory.  In providing any new response, Defendant Lizama must use the definition of "Offer in Compromise" as set forth by Plaintiff.

### c. RPDs

<u>Request for Production of Documents Nos. 1-13</u>:  Plaintiff sought Defendants to produce all materials that support on Defendants' affirmative defenses.  (Mot. to Compel 13 & n.5.) Defendants responded to each of the requests with the same two paragraphs asserting a series of boilerplate objections and stating that documents would be produced on a rolling basis as they became available to Defendants.  (Mot. to Compel, Ex. C, at 22-28.)  Plaintiff asserts that no further documents bearing on Defendants' affirmative defenses would become available "between now and trial," and that Defendants must either state that they have no materials in support of their various defenses or produce such materials.  (Mot. to Compel 14.)  Defendants do not offer any argument in response.

Plaintiff's Motion to Compel is GRANTED as to RPD Nos. 1 to 13, and Defendants are ORDERED to produce the documents or state that no such documents exist, subject to the

continuing obligation to supplement and correct discovery responses. Fed. R. Civ. P. 26(e)(1). The Court notes that should Defendants fail to produce materials by the close of discovery, subsequent pretrial and trial proceedings may dispose of unsupported defenses,[10] preclude newly and untimely disclosed documents, and result in sanctions for discovery misconduct.

Request for Production of Documents Nos. 16-17: Plaintiff sought Defendants to produce materials identified in Interrogatory Nos. 5 and 6 (calling for all communications concerning the claims assigned to Plaintiff). (Mot. to Compel 14 nn.5-6.) Defendants objected to the term "Assigned Claims" and invoked the attorney-client privilege and work-product doctrine. (Mot. to Compel, Ex. C, at 29.) Plaintiff repeats his arguments as to Interrogatory Nos. 5 and 6. (Mot. to Compel 14-15.) Defendants do not offer any response specific to the requests.

Plaintiff's Motion to Compel is GRANTED as to RPD Nos. 16 and 17 and Defendants are ORDERED to produce all documents consistent with their responses to Interrogatory Nos. 5 and 6, as compelled by the Court for the reasons stated *supra* as to Interrogatory Nos. 5 and 6.

Request for Production of Documents No. 18: Plaintiff sought Defendants to produce materials identified in Interrogatory No. 7 (calling for identification of all offers in compromise granted in the last ten years). (Mot. to Compel 15 n.9.) Defendants flatly denied the existence of any responsive documents. (Mot. to Compel, Ex. C, at 29.) Plaintiff Ryan incorporates his arguments as to Interrogatory No. 7 (Mot. to Compel 15) while Defendants do not specifically address the request.

---

[10] The Court notes, however, that RPD Nos. 1 (lack of subject-matter jurisdiction), 2 (lack of personal jurisdiction), 3 (improper venue), 4 (existence of indispensable party), 5 (Plaintiff's lack of standing), 7 (Plaintiff's claims being moot), and 9 (Defendants' absolute immunity) likely may be mooted or superseded by the current posture of this case. The Court further notes that RPD Nos. 12 and 13 are identical. (*See* Mot. to Compel, Ex. C, at 8.)

Plaintiff's Motion to Compel is GRANTED as to RPD No. 18, and Defendants are ORDERED to produce all documents consistent with their response to Interrogatory No. 7, as compelled by the Court for the reasons stated *supra* as to Interrogatory No. 7.

Request for Production of Documents Nos. 19-21: Plaintiff sought Defendants to produce materials identified in Interrogatory Nos. 11-13 (calling for identification of materials should Defendants deny never notifying Plaintiff of the exercise of an alternate remedy in his three qui tam actions). (Mot. to Compel 15-16.) Defendants responded by citing the "pleadings and evidence presently pending before the Ninth Circuit Court of Appeals in *Mansapit-Shimizu and Lizama v. John Ryan*, CA9 Docket No. 24-4522." (Mot. to Compel, Ex. C, at 29-30.) Plaintiff incorporates his arguments as to Interrogatory Nos. 11-13. (Mot. to Compel 16.) Defendants do not specifically address the requests.

Plaintiff's Motion to Compel is DENIED as to RPD Nos. 19 to 21, and Defendants need not produce any documents consistent with the Court's finding *supra* that Defendants did not "deny" the related requests for admissions and thus need not provide any further responses to Interrogatory Nos. 11 to 13.

Request for Production of Documents No. 30: Plaintiff sought Defendants to produce materials identified in Interrogatory No. 25 (calling for identification of all procedures and policies Defendants followed when negotiating or considering the compromise with Titan). (Mot. to Compel 16.) Defendants objected on the basis that they did not negotiate an Offer in Compromise with Titan. (Mot. to Compel, Ex. C, at 31.) Plaintiff Ryan incorporates his arguments as to Interrogatory No. 25. (Mot. to Compel 16.) Defendants do not respond to Plaintiff Ryan's arguments as to Interrogatory No. 25 or Request for Production of Documents No. 30.

Case 1:23-cv-00015    Document 82    Filed 11/06/25    Page 30 of 33

Plaintiff's Motion to Compel is GRANTED as to RPD No. 30, and Defendants are ORDERED to produce all documents consistent with their response to Interrogatory No. 25, as compelled by the Court for the reasons stated *supra* as to Interrogatory No. 25.

**d. Attorneys' Fees and Costs**

As the Court grants in part and denies in part Plaintiff's Motion to Compel, the Court will "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). As indicated at the hearing, and in view of Plaintiff's prevailing on the overwhelming majority of his identified discovery requests, the Court finds that Plaintiff is entitled to attorneys' fees and costs in preparing, arguing, and defending his Motion to Compel, to include the following:

- the time and expense for preparing and filing the Motion to Compel (ECF No. 50);

- the time and expense for preparing and filing the Reply to the Opposition to the Motion to Compel (ECF No. 54);

- the time and expense for preparing and filing the Opposition to the Request to Call Witnesses (ECF No. 63);

- the time and expense for preparing for, and appearing at, the September 16, 2025 virtual status conference (Mins., ECF No. 64);

- the time and expense for preparing for, and appearing at, the September 29, 2025 hearing on, *inter alia*, Plaintiff's Motion to Compel (Mins., ECF No. 69);

- the time and expense for preparing and filing Plaintiff's Supplemental Briefing (ECF No. 71);

- the time and expense for preparing and filing Plaintiff's Reply Re: Supplemental Briefing (ECF No. 77); and

- the time and expense for preparing for, and appearing at, the October 21, 2025 hearing on, *inter alia*, Plaintiff's Motion to Compel (Mins., ECF No. 78).

*See also Marrocco v. Hill*, 291 F.R.D. 586, 590 (D. Nev. 2013) (quoting *Catapult Commc'ns Corp v. Foster*, No. 06 C 6112, 2009 WL 2707040, at *2 (N.D. Ill. Aug. 25, 2009), in explaining that Fed. R. Civ. P. 37(a)'s fee-shifting provision encompasses not only "the original motion to compel," but also subsequent motions practice concerning objections to an order granting the original motion to compel); *Rickels v. City of South Bend*, 33 F.3d 785, 787 (7th Cir. 1994) ("Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries . . . without regard to the merits of the claims."). As orally ordered at the hearing, Plaintiff will file a petition for award of attorneys' fees and costs by November 7, 2025. Defendants will file any response by November 21, 2025. Plaintiff's reply thereto is due December 1, 2025.

### III.    CONCLUSION

For the foregoing reasons, Defendants' requests for disqualification or recusal, as set forth in their Notice of Potential Judicial Conflict (ECF No. 66) and Motion for Judicial Disqualification (ECF No. 70), are DENIED.

Plaintiff's Motion to Compel (ECF No. 50) is GRANTED IN PART as to Interrogatory Nos. 4-7, 18, and 25 and Request for Production of Documents Nos. 1-13, 16-18, and 30 and DENIED IN PART as to all other requests. Defendants are ORDERED to respond to the interrogatories and requests for production of documents by **November 21, 2025**.

Plaintiff will file a petition for award of attorneys' fees and costs pursuant to Fed. R. Civ. P. 37(a)(5)(C) by **November 7, 2025**. Defendant will file any response by **November 21, 2025**; and Plaintiff will file any reply by **December 1, 2025**.

IT IS SO ORDERED this 5th day of November, 2025.

_____
RAMONA V. MANGLONA
District Judge