**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| JOHN RYAN,<br><br>Plaintiff,<br><br>v.<br><br>DAFNE MANSAPIT-SHIMIZU, in her individual capacity; MARIE LIZAMA in her official and individual capacities as the DIRECTOR OF THE GUAM DEPARTMENT OF REVENUE AND TAXATION, and JOHN DOES 1-15,<br><br>Defendants. | Case No. 1:23-cv-00015<br><br>**DECISION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

In this § 1983 civil rights action for damages and declaratory and injunctive relief, Plaintiff John Ryan filed a Motion for a Preliminary Injunction (ECF No. 108) seeking a preliminary injunction against "Defendant officials, in their official capacities, and those acting in concert with them," in view of an ongoing tax appeal proceedings in the Superior Court of Guam related to one of Ryan's qui tam claims brought pursuant to Guam's False Claims and Whistleblower Act. (Mot. for Prelim. Inj. 30, ECF No. 108.) On September 4, 2026, Defendant and current Director Marie Lizama filed a Response (ECF No. 113), styled in the name of the Guam Department of Revenue and Taxation ("DRT"), opposing Ryan's Motion. Ryan filed a timely Reply (ECF No. 117). The Court held a hearing on the Motion on September 30, 2026, before taking the matter under advisement. For the reasons set forth below, the Court DENIES WITHOUT PREJUDICE Ryan's Motion and declines to issue a preliminary injunction against Defendant Lizama and DRT.

## I. BACKGROUND

The Court has previously recounted, at length, the procedural history of this case and the nature of Ryan's substantive claims in deciding motions to dismiss, for judicial disqualification, and to compel discovery. (*See* Decision & Order Granting Def. Villapando's Mot. to Dismiss, & Den. Defs. Mansapit-Shimizu & Lizama's Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) 2-7, ECF No. 37; Mem. Decision Den. Defs.' Mot. for Jud. Disqualification & Granting in Part Pl.'s Mot. to Compel 1-6, ECF No. 82.) In support of this Motion, Ryan first largely reiterates the factual allegations underlying his Complaint:

(1) In the Superior Court of Guam, Ryan filed three qui tam actions pursuant to Guam's False Claims and Whistleblower Act ("Whistleblower Act," 5 GCA §§ 37101 *et seq.*), alleging that three alcohol wholesalers—Titan Imports, Inc. ("Titan"), Carson Guam Corporation ("Carson"), and Permarch Guam, Inc. ("Permarch")—were not paying alcohol excise taxes as required under Guam law. (Mot. for Prelim. Inj. 10-11 [hereinafter "Pl.'s Mot.]; *see also* Compl. ¶¶ 28-31, 128, 129, 139, ECF No. 1.)

(2) Though the Government of Guam declined to intervene in any of Ryan's three qui tam actions, DRT nonetheless compromised his claims against Titan and Carson through negotiations, settlements, and administrative actions, all without providing Ryan with any notice or opportunity to respond, and delayed or outright refused to pay him his share of the proceeds as required by the Whistleblower Act. (Pl.'s Mot. 11-12; *see also* Compl. ¶¶ 57-138.)

As to Ryan's still-pending qui tam action against Permarch, Ryan's Motion represents:

(1) DRT previously conducted an "administrative assessment" of Permarch's tax liability—effectively determining the value of Ryan's qui tam claim against Permarch—and made

offers in compromise to resolve Permarch's outstanding tax liability and penalties, all without providing him appropriate notice as required by Guam law. (Pl.'s Mot. 12.)

(2) Permarch neither accepted any of DRT's offers in compromise nor appealed DRT's "administrative assessment," apparently because the time to appeal DRT's assessment had run and, according to Permarch in Ryan's qui tam action against it, DRT allegedly had authorized Permarch to not pay its taxes due. (*Id.* at 12-13.)

(3) DRT subsequently "reopened its administrative procedures"—again without providing Ryan any notice or opportunity to participate—and made a new determination as to Permarch's liability. (*Id* at 13.) Such redetermination also apparently triggered a new appeal period, which led to Permarch lodging an appeal ("the Tax Appeal Case") of DRT's new assessment in the Superior Court of Guam sometime earlier this year. (*Id.* (identifying *Permarch Guam, Inc. v. Lizama*, Superior Court of Guam special proceeding case number SP0031-26).)

(4) Ryan moved to intervene in Permarch's Tax Appeal Case in the Superior Court of Guam. (*Id.*) DRT opposed intervention alongside Permarch on the ground that Ryan is not entitled to be involved in any settlement negotiations or other resolution processes between DRT and a taxpayer—and Ryan is owed, at most, "notice." (*Id.*) The Superior Court of Guam rejected DRT's arguments and granted Ryan's motion to intervene by decision and order dated August 26, 2026. (Pl.'s Reply 10-11 (citing Pl.'s Reply Ex. N. (Decision and Order Granting Motion to Intervene in *Permarch Guam, Inc. v. Lizama*, Superior Court of Guam special proceeding case number SP0031-26), ECF No. 117-3), ECF No. 117.) DRT has sought reconsideration of the decision and order. (*Id.* at 11.)

Ryan contends that DRT's actions as to Permarch are consistent with its previous injurious conduct concerning Titan and Carson, namely, that DRT is attempting to resolve Ryan's qui tam claims in secret and in derogation of his statutory and constitutional rights. (Pl.'s Mot. 11-12.) Ryan accordingly seeks a preliminary injunction against Defendant Lizama and DRT officials, all in their official capacities, that

(1) forbids the settlement, compromise, or resolution of his qui tam claim against Permarch "without first giving [him] written notice and a meaningful opportunity to respond" (*id.* at 30);

(2) requires the submission of any proposed settlement of his qui tam claim against Permarch to the Superior Court of Guam in his qui tam action against Permarch for approval and forbids the execution, acceptance, or effectuation of any such settlement without judicial approval (*id.*); and

(3) forbids the distribution, transfer, or any application of any proceeds collected from Permarch "in a manner that defeats [Plaintiff's] statutory share, attorneys' fees, costs, and expenses," pending approval by the Superior Court of Guam in his qui tam action against Permarch (*id.*).

## II. LEGAL STANDARD

An injunction is an "extraordinary remedy" that does not "issue[] as of course" or to "restrain an act the injurious consequences of which are merely trifling." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982) (internal quotation marks omitted); *see also id.* at 313 ("The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."). The Ninth Circuit has explained:

> A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and "preserve[s] the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988); *see also Heckler v. Lopez*, [463 U.S. 1328, 1333 (1983)] (a prohibitory injunction "freezes the positions of the partiers until the court can hear the case on the merits"). A mandatory injunction "orders a responsible party to 'take action.'" *Meghrig v. KFC W., Inc.*,, [516 U.S. 479, 484 (1996)]. A mandatory injunction "'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'" *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). In general, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* at 1115 (quoting *Clune v. Publishers' Ass'n of N.Y. City*, 214 F. Supp. 520, 531 (S.D.N.Y. 1963)).
>
> The *status quo ante litem* referenced in *Chalk* means "'the last, uncontested status which preceded the pending controversy.'" *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th Cir. 1984) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Where, as here, the government opposes a preliminary injunction, the third and fourth [*Winter*] factors merge into one inquiry."[1] *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021). A prohibitory injunction can issue where there exist "'serious questions going to the merits' and a balance of hardships that tips sharply

[1] DRT is not named as a party in this suit. However, Ryan directs his request for an injunction against Lizama in her official capacity as DRT Director; and Lizama's opposition is couched as being made on behalf of DRT. *See also Porretti v. Dzurenda*, 11 F.4th 1037, 1043 & n.1, 1047 (9th Cir. 2021) (applying merging of third and fourth *Winter* factors in preliminary injunction analysis, even though named defendants were individual prison officials and did not include any governmental entity).

towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in this public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *cf. also Weinberger*, 456 U.S. at 312 ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."). On the other hand, a plaintiff seeking a mandatory injunction bears a "doubly demanding" burden as to the first *Winter* factor: "[he] must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

In exercising its "sound discretion" in issuing or withholding injunctive relief, *Weinberger*, 456 U.S. at 312, a district court may consider otherwise inadmissible evidence, *see Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1198 (9th Cir. 2024), and generally "*must* consider all four *Winter* factors," *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal quotation marks omitted). But as the first factor "is a threshold inquiry and is the most important factor," should a plaintiff "fail[] to show a likelihood of success on the merits," a district court "need not consider the other factors[.]" *Id.* (internal quotation marks and citations omitted).

## III. DISCUSSION

DRT contends Ryan cannot satisfy any of the four-part *Winter* standard. (DRT's Resp. 5.) In particular, DRT contends (1) Ryan cannot establish a likelihood of success on the proposition that 5 GCA § 37103 and § 37203(e) give him the right to participate in DRT's administrative proceedings or tax negotiations; (2) he cannot establish irreparable injury because his exclusive remedy is a statutory monetary award for which Guam law adequately provides a legal remedy; (3) the balance of equities does not favor him because his right to an award is protected by law; and (4) it is not in the public interest "for a relator to ask this Court to judicially force is [sic]

presence into a non-party's tax case that is pending before the Superior Court of Guam over the application of purely local Guam business tax laws." (*Id.* at 5-6.).

The Court declines to issue an injunction not on the grounds raised by DRT, but instead on the ground that Ryan lacks standing to seek his requested preliminary injunctive relief because the injuries Ryan claims are not sufficiently actual or imminent. As such, denial without prejudice of his Motion is appropriate.

As with any other claim for relief, Ryan must satisfy the "irreducible constitutional minimum of standing" necessary to invoke the Court's subject-matter jurisdiction to issue his desired preliminary injunctive relief. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Such standing consists of three elements: (1) injury in fact, *i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood, rising above mere speculation, that "the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citations omitted)). "[A]t the preliminary injunction stage, a plaintiff must make a 'clear showing' of his injury in fact." *Lopez*, 630 F.3d at 785 (citing *Winter*, 555 U.S. at 22).

Here, Ryan's requested injunction is wholly conditional: the terms of the injunction provide that DRT is not required to perform unless DRT (1) "settle[s], compromise[s], or otherwise resolve[s]" the claim underlying Ryan's qui tam action against Permarch, (2) arrives at a "proposed settlement or proposal of settlement" of such claim, or (3) "collect[s]" "any proceeds . . . from Permarch[.]" (Pl.'s Mot. 30.) Thus, at a minimum, Ryan must make out a showing that DRT is indeed engaged in conduct to settle, compromise, or otherwise resolve the claim underlying his

qui tam action against Permarch such that his claimed injury—namely, deprivation of his protected property interest in the proceeds to be collected from Permarch—is actual and imminent.

At this juncture, first, as to any injury Ryan would suffer as a consequence of Permarch's now-pending appeal of DRT's alleged re-determination of Permarch's tax liability, the Court does not discern any actual or imminent injury that Ryan faces in view of Ryan's successfully moving to intervene in the Tax Appeal Case. At bottom, Ryan's claimed injury stems from the denial of his right to notice and an opportunity to be heard on the merits of the amount of Permarch's tax liability—as the final determination on the total amount of proceeds to be collected from Permarch also sets the amount of proceeds to which Ryan is entitled under the Whistleblower Act. *See* 5 GCA § 37103(b)(7) ("If the government of Guam elects not to proceed with [the qui tam action], the Tax Enforcement Division shall award not less than thirty percent (30%) of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action.").[2] Ryan's

---

[2] The Court rejects Defendant Lizama's contention that Permarch's tax appeal is not an "alternate remedy" within the meaning of 5 GCA § 37203(e). Defendant Lizama does not dispute Ryan's representations that Permarch pursued the tax appeal *after* DRT had already made an initial assessment of Permarch's tax liability, assigned Ryan the right to prosecute the qui tam action against Permarch by electing not to intervene in the action, and then re-assessed Permarch's tax liability and triggered a new appeal period. Thus, DRT's own conduct created the conditions for the tax appeal—and any final judgment on the merits in the tax appeal will conclusively determine the amount of Permarch's tax liability not only in the tax appeal, but also for the purposes of Ryan's qui tam action and statutory entitlement to a cut of the proceeds. *See* 5 GCA § 37203(e) ("Any finding of fact or conclusion of law made in such [alternate remedy] proceeding that has become final shall be conclusive on all parties to [a qui tam action].").

In other words, to borrow from the Ninth Circuit's interpretation of the federal Whistleblower Act's "alternate remedy" language at 31 U.S.C. § 3730(c)(5), which language is substantively identical to 5 GCA § 37203(e), by re-determining Permarch's tax liability and defending such re-determination in Permarch's tax appeal, DRT is "seek[ing] a remedy in such proceeding that effectively takes the place of the [Whistleblower Act] remedy." *United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1011 (9th Cir. 2001); *see also id.* at 1012 ("It would be inconsistent not only with the plain meaning of the broad language employed in the statute, but also with the purpose of the statute, to allow the government to obtain from a qui tam defendant a remedy that could have been obtained in an already-filed [qui tam] action, and then to

successful intervention in the Tax Appeal Case provides him with access to notice and a meaningful opportunity to advance his interests concerning the re-determined amount of Permarch's tax liability before a neutral decisionmaker and, if necessary, to pursue or defend his interests in any further appellate proceedings after entry of judgment in the Superior Court of Guam.[3] As such, any adverse decision on the re-determined amount of Permarch's tax liability as a result of the Tax Appeal Case being fully litigated does not implicate an actual or imminent injury conferring standing for a preliminary injunction because Ryan will not have been, or is not likely to be, deprived of his right to the proceeds without constitutionally sufficient due process.

Second, as to any injury Ryan would suffer should DRT settle Permarch's tax liability through any *out-of-court* methods, including any efforts to resolve Permarch's tax appeal short of full-blown litigation and judgment on the merits, Ryan only points to past conduct and associated claimed injuries without identifying facts that indicate that DRT and Permarch are presently engaged in out-of-court conduct that will imminently settle, compromise, or otherwise resolve the claim underlying his qui tam action against Permarch. The Court is mindful that "[p]ast wrongs . . . are 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). But past wrongs, standing alone, are insufficient to confer standing; Ryan must instead show "a sufficient likelihood that he will again be wronged in a similar way." *Id.* (quoting *Lyons*, 461 U.S. at 102). "In other words, the 'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not

---

argue that the proceeds of that remedy need not be shared with the whistleblower because the remedy was not an 'alternate remedy' within the meaning of the [Whistleblower Act].").

[3] The Parties dispute whether the Whistleblower Act confers Ryan with rights beyond his right to the proceeds. The Court need not, and accordingly declines to, resolve the Parties' dispute at this juncture.

sufficient.'" *Id.* at 967 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). On this record, especially in view of Permarch's filing its appeal of DRT's re-determination of the former's tax liability and Ryan's successful intervention in the tax appeal and without further information concerning (at the very least) DRT and Permarch's interactions, the Court cannot find that DRT is imminently likely to engage in conduct that will almost certainly consummate a settlement in a fashion akin to DRT's interactions with Titan and Carson. Thus, as with any injury arising from Permarch's tax appeal, the Court similarly must conclude that Ryan is not facing actual or imminent concrete injury arising from any possible out-of-court settlement between DRT and Permarch. *See also Trump v. California*, Nos. 26A124 & 26A139, 609 U.S. ____, 2026 WL 2473573, at *2 (Aug. 24, 2026) (finding states lacked standing in suit against federal government seeking to enjoin executive order concerning election integrity where to reach states' claimed injury, a court would be required to speculate not only on whether a government official will act, but also "the shape that any such action might ultimately take," and citing *Clapper*, 568 U.S. at 414-15 n.5, in explaining that "Article III prohibits federal courts from stacking hypothetical on hypothetical to speculate that harm will eventually materialize").

Third, Ryan's claimed injury arising from any settlement between DRT and Permarch that would purport to compromise Ryan's claim to attorneys' fees, costs, and expenses under the Whistleblower Act cannot confer standing because the Whistleblower Act appears to vest the determination of such fees, costs, and expenses exclusively in the court hearing Ryan's qui tam action—*i.e.*, any "alternate remedy" cannot compromise Ryan's right to fees, costs, and expenses. Under 5 GCA § 37203(e), Ryan is entitled to "the same rights" in any alternate remedy proceeding "as [he] would have had if the [qui tam] action had continued under [5 GCA § 37203]." Regardless of whether the Government of Guam elects to intervene in his qui tam action, should Ryan

prevail—whether on the action directly or through settlement resulting from the action—Ryan is entitled to "receive an amount for reasonable expenses *which the court finds* to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant."[4] 5 GCA § 37204(a) (emphasis added) (Government of Guam elects to intervene); *id.* § 37204(b)(2) (emphasis added) (Government of Guam declines to intervene and plaintiff prevails on the action or settles the action); 5 GCA § 37103(b)(7) (emphasis added) (Government of Guam declines to intervene and obtains a settlement in response to qui tam action). Thus, absent a clear showing that any potential settlement between DRT and Permarch would preclude Ryan from pursuing his statutorily authorized fees, costs, and expenses through the ordinary course of litigation in his qui tam action, Ryan's claim of injury as to this aspect of his possible recovery is also too speculative to confer standing.

## IV. CONCLUSION

The Court is constrained to conclude that Ryan is not facing actual or imminent concrete injury that is sufficient to confer him with standing to seek his requested preliminary injunction against the DRT Director. The Court emphasizes, however, that this order does not conclusively resolve the arguments on the merits the Parties raise or the scope of Ryan's rights under the Whistleblower Act. Accordingly, the Court DENIES WITHOUT PREJUDICE Ryan's Motion for a Preliminary Injunction (ECF No. 108).

---

[4] As any expenses, fees, and costs would be awarded against the qui tam defendant, it appears that a qui tam defendant engaged with DRT to pursue any "alternate remedy" would be well advised to also notify the qui tam relator of the developments in those proceedings *regardless of whether DRT discharges its due process obligations to the qui tam relator*. Should DRT and a qui tam defendant settle the claim without notifying the qui tam relator, nothing precludes the qui tam relator from arguing that the continued prosecution of the qui tam action after the settlement was reasonable such that the qui tam defendant should compensate the qui tam relator for all expenses, fees, and costs incurred while the qui tam relator was left out of the loop—especially if DRT and the qui tam defendant sought to conceal the fact of settlement from the qui tam relator.

IT IS SO ORDERED this 13th day of October, 2026.

RAMONA V. MANGLONA
District Judge